In re Robert V. MAIER and Carolyn Anne Maier, d/b/a Captain Clean and CCI, Inc., Debtors.

Robert REZAC, Plaintiff,

v.

Robert V. MAIER and Carolyn Anne Maier; and Captain Clean, Defendants.

Bankruptcy No. 3–83–00480.
Adv. No. 83–7284.

United States Bankruptcy Court,
D. Minnesota.

March 21, 1984.

Kenneth Kludt, Moorhead, Minn., for plaintiff.

Gilbert Neset, Fargo, N.D., for defendants.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

Robert Rezac, Plaintiff in the above-entitled adversary proceeding, filed a Complaint with the Court on July 6, 1983, seek-

ing a determination of non-dischargeability. The Plaintiff obtained a state court judgment against the Debtors, granting an award of damages in the amount of $8,206.23 for work-related injuries. Rezac requests that the Court determine that the judgment debt is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Further, Rezac requests that the Court determine that a parcel of lake property seized by the Plaintiff is no longer property of the Debtors. The Debtors filed their Answer with the Court on August 5, 1983, wherein they resisted the relief requested by Rezac. Trial was held before the undersigned on March 8, 1984, at Fargo, North Dakota. At trial, Rezac abandoned his request for relief as to the parcel of lake property.

## FINDINGS OF FACT

On June 26, 1979, Robert Rezac was injured while working for the Debtors at their place of business. Although the Debtors operated their cleaning business out of a shop located at their residence in Sabin, Minnesota, jobs were frequently in North Dakota, and Rezac worked in both states. When Rezac began working for the Debtors, the Plaintiff did not consider that the job would entail dangerous work. Rezac later discovered, when directed to perform various sand-blasting work, that the nature of his responsibilities involved some risk. The injuries which Rezac sustained on June 26, 1979, resulted from his operation of a high-compression air gun while sand-blasting at the Debtors' Minnesota shop and residence. As a result of his injuries, Rezac required emergency treatment, hospitalization, and three weeks of rehabilitation during which time Rezac was unable to work. Rezac discovered that under the pretext that the Debtors were operating a North Dakota business, the Debtors had enrolled for Unemployment Compensation through the State of North Dakota. The State of North Dakota, however, denied Rezac's application for workmen's compensation benefits because the injury occurred in Minnesota. The State of Minnesota also denied Rezac any benefits from their workers' compensation fund,

since the Debtors in this instance had failed to contribute to that state's workers' compensation fund. There was no testimony offered by the Debtors as to why, as a Minnesota-based business, they failed to obtain Minnesota Workers' Compensation coverage, yet had apparently undertaken to secure such coverage in North Dakota. Rezac subsequently obtained a state court judgment awarding the sum of $8,206.23 for the damages he incurred by reason of the work-related injury.

## CONCLUSIONS OF LAW

The issue in the present instance is whether the Debtors impliedly represented to the Plaintiff that he would be entitled to workers' compensation benefits when injured, and that those representations were made under circumstances which give rise to nondischargeable liability pursuant to section 523(a)(2)(A) of the Bankruptcy Code. Previously, courts presented with similar circumstances have determined that the failure to insure against workers' compensation claims is not a willful and malicious act within the preview of section 523(a)(6) unless the injury that is produced inevitably follows the defendant's wrongful act. *In re Scott*, 13 B.R. 25, 26–27 (Bkrtcy. C.D.Ill.1981). *See also In re Brower*, 24 B.R. 246, 247 (Bkrtcy.D.N.M.1982). Rezac, however, does not contend that the inferred promise of workers' compensation benefits made by the Debtors in this instance was a willful and malicious act. The Plaintiff in this instance requests determination of nondischargeability under section 523(a)(2)(A) of the Bankruptcy Code. That section of the Bankruptcy Code necessarily involves separate and distinct elements of proof than those required under section 523(a)(6).

■ To have a debt declared non-dischargeable in bankruptcy under 11 U.S.C. § 523(a)(2)(A), the burden is on the plaintiff to prove each of five elements:

1. That the debtor made the representations;

2. That at the time the representations were made he knew them to be false;

3. That the representations were made with the intention and purpose of deceiving the creditor;

4. That the creditor reasonably relied on the representations;

5. That the creditor sustained the alleged injury as a proximate result of the representations having been made.

*See In re Houtman*, 568 F.2d 651 (9th Cir.1978); *In re Vickers*, 577 F.2d 683 (10th Cir.1978); and *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540 (W.D.Va.1967).

■■■ The elements needed for recovery under section 523(a)(2)(A) are largely present in this instance. As one court has noted, "[S]ilence, or the concealment of a material fact, can be the basis of a false impression which creates a misrepresentation actionable under section 523(a)(2)(A)." *In re Weinstein*, 31 B.R. 804, 809 (Bkrtcy. E.D.N.Y.1983) (citations omitted). The Debtors' failure to provide workers' compensation benefits is information which ordinarily should be disclosed to a new employee. That the Debtors proceeded to enroll under the North Dakota Workmen's Compensation program evidences the fact that the Debtors were aware of the need to provide such benefits, and the fact that their employees were required to work in both states could give rise to the reasonable assumption on the part of such employees that workers' compensation coverage existed in both states. Rezac testified that had he known of the Debtors' failure to provide Minnesota workers' compensation benefits, he would not have operated the sand blaster which ultimately led to his injuries. It is clear that the Debtors, by operating in both Minnesota and North Dakota, impliedly represented to Rezac that the usual workers' compensation benefits would be available regardless of which state he happened to be working in. Rezac reasonably relied on this false impression when he accepted employment and the accompanying possibility of work-related injuries which would not be compensated under the benefits provided by the Debtors. The first four elements of section 523(a)(2)(A) are met. The Plaintiff's recovery in this matter ultimately rests on whether the loss sustained by Rezac was a proximate result of the misrepresentations of the Debtors. This is a more difficult task.

■■ The proximate cause element of section 523 requires simply that the action of the debtor was the act, without which the claimant would not have suffered the loss complained of. In the present instance, Rezac argues that but for the Debtors' failure to provide Minnesota Workers' Compensation benefits, he would have recovered for his work-related injuries.

Although employers in Minnesota are required by state law to maintain workers' compensation insurance (M.S.A. § 176.-181(2)), the failure to do so does not leave an employee without a remedy. The absence of compensation insurance triggers the provisions of section 176.031 [1] which

---

1. Section 176.031 of the Minnesota Statutes Annotated provides:

The liability of an employer prescribed by this chapter is exclusive and in the place of any other liability to such employe, his personal representative, surviving spouse, parent, any child, dependent, next of kin, or other person entitled to recover damages on account of injury or death. If an employer other than the state or any municipal subdivision thereof fails to insure or self-insure his liability for compensation to his injured employes and their dependents, an injured employe, or his legal representatives or, if death results from the injury, any dependent may elect to claim compensation under this chapter or to maintain an action in the courts for damages on account of such injury or death. In such action it is not necessary to plead or prove freedom from contributory negligence. The defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, that the employe assumed the risk of his employment, or that the injury was due to the contributory negligence of the employe, unless it appears that such negligence was wilful on the part of the employe. The burden of proof to establish such wilful negligence is upon the defendant. For the purposes of this chapter the state and each municipal subdivision thereof is treated as a self-insurer when not carrying insurance at the

provides that in the event of an employer's failure to maintain insurance, an injured employee may nonetheless elect to claim compensation under the workers' compensation chapter or he may, in the alternative, proceed with a tort action against his employer. In the event the employee decides to claim under the chapter, the law is quite clear that he is entitled to receive the same benefits as any other claimant despite his employer's non-insured status. If his claim is successful, the Minnesota Commissioner of Labor and Industry has a cause of action for subrogation against the uninsured employer. *St. Martin v. KLA Enterprises, Inc.*, 269 N.W.2d 59 (Minn.1978). If on the other hand the employee decides to proceed with a tort action, section 176.031 affords him certain very real benefits. The law in such instance abrogates the normal defenses of contributory negligence, assumption of risk and the fellow servant doctrine. A reading of these two state statutes leaves the Court with the distinct impression that the Minnesota legislature was very careful to preserve an employee's right to workers' compensation coverage even though his employer might not have been insured. The fact that Rezac's employer was uninsured did not leave him without workers' compensation coverage, in fact it afforded him an additional remedy he would not have otherwise had if insurance had in fact existed.

For whatever reason, Rezac elected under section 176.031 to pursue the Debtors in a state court action. That action resulted in a judgment in his favor on August 19, 1980, in the sum of $8,206.23, the sum which he now seeks to have declared nondischargeable. This Court does not condone the Debtors' failure to maintain proper workers' compensation coverage, but such failure did not prevent Rezac from obtaining worker compensation benefits and was not the proximate cause of the damages incurred. It was Rezac's election to proceed with the alternative tort remedy that resulted in the judgment which now unfortunately may be uncollectable due to the Debtors' bankruptcy filing. Rezac has failed to establish the final element of section 523(a)(2)(A), and the debt is therefore dischargeable.

Accordingly, the Plaintiff's Complaint is in all things dismissed without costs to either party.

IT IS SO ORDERED.

time of the injury or death of an employe. Laws 1953, c. 755, § 3.

M.S.A. § 176.031 (1966). See also M.S.A. § 176.183 (West Supp.1984).