In re Cynthia SMITH, Debtor.

Frederick A. Baker, Plaintiff,

v.

Cynthia Smith, Defendant.

Bankruptcy No. 00–19862.
Adversary No. 01–1184.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Dec. 18, 2001.

Sheldon Stein, Harold Pollock, Roy J. Schechter, Cleveland, OH, for Plaintiff.

Donald C. Nance, Cleveland, OH, for Defendant.

## *ORDER*

RANDOLPH BAXTER, Bankruptcy Judge.

The Plaintiff, Frederick A. Baker ("Baker"), filed the above-styled adversary proceeding to have the Court determine the dischargeability of a certain debt owed to him by the Debtor–Defendant Cynthia Smith. Relief is sought under provisions of § 523(a)(2)(A), (a)(4), and (a)(6) of the Bankruptcy Code. Core Jurisdiction of this matter is acquired under provisions of 28 U.S.C. § 157(b)(2)(A)and (I), 28 U.S.C. § 1334, and General Order No. 84 of this district. Following a trial proceeding and

a review of the record, generally, the following findings and conclusions are herein made:

\*

The following facts are generally not in dispute. In September 1989, Baker hired the Debtor–Defendant Cynthia Smith (hereinafter Debtor), an attorney, to file a lawsuit on his behalf in the Cuyahoga County, Ohio Court of Common Pleas, alleging deprivation of constitutional rights, breach of and interference with contract, wrongful termination, defamation, and medical negligence, arising out of his 1989 job termination on specific charges from the City of Cleveland's Department of Public Safety. On May 4, 1990, he paid the Debtor $1,000.00, as a retainer, to file the lawsuit. (Ex. 1).

The Debtor filed said lawsuit in September, 1996, approximately six years later. On November 8, 1996, the City of Cleveland, a named defendant in Baker's state court civil action, moved to dismiss the case alleging, *inter alia*, that his claims were time barred by the relevant statute of limitations. (Ex. 4). The Debtor moved and was granted an extension of time to respond to the dismissal motion until February 18, 1997. (Exs. 6, 7). On February 18, 1997, Lutheran Downtown Healthcare, another party defendant in the state court civil action, also moved, *inter alia*, to dismiss Baker's claims. (Ex. 5). The Debtor failed to respond to either motion to dismiss on behalf of Baker. The Cuyahoga County Court of Common Pleas granted, without objection, both motions to dismiss. (Ex. 8).

Prepetition, the Debtor and Baker entered into an agreement for the release of the Debtor from any malpractice liability in consideration of $30,000.00 to be paid by Debtor to Baker in installments of $2,000 per month until the balance was paid in full. (Ex. 9). The Debtor gave Baker a $2,000 down payment on the settlement agreement. (Ex. 10). The $2,000.00 check was returned by her bank for insufficient funds. Sufficient funds were never remitted to Baker pursuant to the above-referenced settlement agreement.

Subsequently, Baker commenced a civil suit in the state court against the Debtor alleging fraud, malpractice, and breach of fiduciary duty. (Ex. 11). The parties then entered into a second settlement agreement, for $50,000.00, to release the Debtor from liability. (Ex. 12). Attendant to this second settlement, the Debtor executed a Cognovit Note as part of the parties' second agreement. (Ex. 13). The Debtor made several payments totaling $14,000.00 in furtherance of the second settlement agreement. (Debtor, Direct). The Debtor then defaulted on the second settlement agreement. On April 25, 2000, Baker obtained judgment on the Cognovit Note in the amount of $36,426.33, plus 10% interest and costs upon the Debtor's failure to make timely payments under the settlement terms of the second agreement. (Ex. 13).

\*\*

The issue for this Court to decide is whether the remaining balance owing to Baker on the second settlement agreement is nondischargeable under § 523(a)(2)(A), (a)(4), or (a)(6) of the Bankruptcy Code. 11 U.S.C. § 523(a)(2)(A), (a)(4), or (a)(6).

\*\*\*

Baker avers that the remaining balance on the settlement agreement is excepted from discharge pursuant to Section § 523(a)(2)(A), (a)(4), or (a)(6) of the Bankruptcy Code. Baker also contends that the Debtor was acting in a fiduciary capacity, in that the Cognovit Note was made with the intention that it serve as documentation of the obligation which was incurred by the Debtor in 1997. The

Debtor, in opposition, contends that she performed her obligations to Baker fully and that the agreement between the parties was devoid of any admission of fraud or willful and wanton misrepresentation or negligence. Thus, the Debtor maintains, the subject debt is dischargeable.

### Section 523(a)(2)(A)

■ Section 523(a)(2) provides, in pertinent part:

Exceptions to discharge –

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition....

11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) pertains to cases involving false pretenses, false representation, or actual fraud. In cases involving exceptions to discharge, the burden lies upon the complainant to prove nondischargeability by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). To satisfy the burden of proof, Baker must establish: "1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; 2) the debtor intended to deceive the creditor; 3) the creditor justifiably relied on the false representation; and 4) its reliance was the proximate cause of loss." *Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280–81 (6th Cir.1998) (citing *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 961 (6th Cir.1993)). Whether the Debtor possessed an intent to defraud Baker is determined by a subjective standard. *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995).

■ Baker presented credible evidence that he paid the Debtor $1,000.00 to file the state court lawsuit on his behalf, challenging his termination from the City of Cleveland's Department of Public Safety. Baker repeatedly tried unsuccessfully to contact the Debtor by phone to check the status of his case. His testimony revealed that he contacted the Debtor every two months to inquire about the case by going to the Debtor's parents' home where she was staying. (Baker, Direct).

The Debtor's testimony was incredible where she testified she never told Baker that the state court lawsuit was filed. Under the circumstances, it was reasonable for Baker to assume that once he retained Debtor, as counsel, that she would follow through to file the lawsuit on a timely basis, especially within a six year period. Moreover, it is inconceivable that the Debtor allowed the statute of limitations to lapse, while purportedly conducting discovery and attending continuing legal education seminars, since the Debtor, previously, had litigated a wrongful termination case. (Debtor, Court Inquiry). Further, unrefuted testimony revealed that during a meeting in March, 1997, the Debtor did not initially disclose the fact that Baker's case had been dismissed. (Baker, Direct).

The Model Rules of Professional Conduct certifies that a lawyer shall keep a client reasonably informed. Specifically, Rule 1.4 of the Model Rules of Professional Conduct states in pertinent part:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to per-

mit the client to make informed decisions regarding the representation.

ABA Model Rules of Professional Conduct R. 1.4 (1998); Ohio Code of Prof. Resp. EC 7–8.

■ It is clear that the Debtor violated Rule 1.4 of the Model Rules of Professional Conduct in failing to keep Baker "reasonably informed" about the status of his lawsuit. Indeed, the Debtor misrepresented, by omitting facts, necessary to keep her client reasonably informed that his case was pending or dismissed. It is well established that a failure to disclose can constitute a misrepresentation for nondischargeability purposes. *Merchants National Bank of Winona v. Moen (In re Moen)*, 238 B.R. 785, 791 (8th Cir. BAP 1999) (citing *In re Van Horne*, 823 F.2d 1285 (8th Cir.1987); *In re Larkin*, 189 B.R. 234, 239 (Bankr.D.Mass.1995); *In re Demarest*, 176 B.R. 917, 920 (Bankr. W.D.Wash.1995), *aff'd*, 124 F.3d 211, 1997 WL 599660 (9th Cir.1997); *In re Jenkins*, 61 B.R. 30, 40 (Bankr.D.N.D.1986); *In re Maier*, 38 B.R. 231, 233 (Bankr.D.Minn. 1984)).

In summary, a basis for nondischargeable fraudulent conduct under § 523(a)(2)(A) can be evinced from the following findings:

1) Debtor's extensive delay (approximately six years) before she filed his lawsuit and after accepting a $1,000.00 retainer;

2) Debtor's failure to file a timely lawsuit on his behalf;

3) Debtor's failure to respond to two separate dismissal motions in Baker's state court action;

4) Debtor's extensive evasiveness in responding to Baker's several attempts to contact her regarding the status of his state court action;

5) Debtor's breach of both prepetition settlement agreements, which eventually resulted in a Cognovit judgment;

6) Debtor's unreasonable delay in informing Baker that his state court action had been dismissed, while causing him to believe it was still pending.

The totality of these findings clearly evince fraudulent conduct by the Debtor. For the foregoing reasons, Baker has sustained his burden of proof under § 523(a)(2)(A) of the Bankruptcy Code.

### Section 523(a)(4)

Section 523(a)(4) reads in pertinent part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

11 U.S.C. § 523(a)(4). Under the plain reading of the statute, the phrase "while acting in a fiduciary capacity" clearly qualifies the phrase "fraud or defalcation," and not "embezzlement" or "larceny," so that debts resulting from embezzlement or larceny are nondischargeable whether or not done while acting in a fiduciary capacity. *Davis v. Kindrick (In re Kindrick)*, 213 B.R. 504 (Bankr.N.D.Ohio 1997).

■■ The Sixth Circuit has determined that "fraud or defalcation while acting in a fiduciary capacity" applies to express or technical trusts, but not to constructive trusts. *In re Penick*, 149 F.3d 1184 (6th Cir.1998). Thus, § 523(a)(4) applies only where the debtor was already a fiduciary at the time the debt was created, not where the fiduciary relationship arose later. *Id.* Additionally, the express trust must pre-exist the creation of the debt. *Id.*

■ The Sixth Circuit also established that the attorney-client relationship, with-

out more, is insufficient to establish the necessary fiduciary relationship for defalcation under § 523(a)(4). *R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 179 (6th Cir.1997). Instead, the debtor must actually hold in trust for a third party to satisfy the fiduciary relationship element of the defalcation provision of § 523(a)(4). *Id.*

The above quoted opinions from the Sixth Circuit preclude a finding that the attorney-client relationship between Baker and the Debtor is sufficient to establish the necessary fiduciary relationship for defalcation under § 523(a)(4). Consequently, without evidence that an express trust existed between the parties prior to the existence of the attorney-client relationship, the Cognovit Note Judgment cannot be excepted from discharge under § 523(a)(4). Accordingly, Baker has not established a sufficient basis for a finding of nondischargeability under § 523(a)(4).

### Section 523(a)(6)

 Baker also seeks a ruling of nondischargeability under Section 523(a)(6). Therein, a debt is nondischargeable where it was created as a result of willful and malicious injury by the debtor to another entity or to the property of another entity. The Supreme Court's ruling in *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) established that unless 'the actor desires to cause consequences of his act, or … believes that the consequences are substantially certain to result from it,' Restatement (Second) of Torts § 8A, at 15 (1964), he has not committed a 'willful and malicious injury' as defined under § 523(a)(6). *See In re Markowitz*, 190 F.3d 455, 464 (6th Cir.1999)(interpreting the Supreme Court's *Geiger* decision). In other words, a debtor's conduct is "willful" for purposes of § 523(a)(6) only when the debtor intended his conduct and the resulting conse-

quences of that conduct. *Geiger*, supra. A debtor is deemed to have acted "maliciously" for purposes of § 523(a)(6) of the Bankruptcy Code when his action is taken in conscious disregard of his duties or without just cause or excuse. *Gonzalez v. Moffitt (In re Moffitt)*, 252 B.R. 916, 923 (6th Cir. BAP 2000).

 The evidence presented at trial does not warrant a finding of nondischargeability pursuant to § 523(a)(6). The Debtor's conduct, relative to the non-payment on the balance of the second settlement agreement, was not shown to be willful and malicious in light of the Supreme Court standard enunciated in *Geiger*. The Debtor testified that she made payments totaling $14,000 in furtherance of the second settlement agreement. Likewise, Baker testified on cross-examination that he had received that amount from the Debtor. Baker did not provide sufficient evidence of the Debtor's intent to willfully or maliciously breach the second settlement agreement, where upon the balance was unpaid. More specifically, Baker failed to demonstrate that the Debtor intended to cause any consequences he may have suffered as a result of the Debtor's failure to remit the full payment on the second settlement agreement. Baker has not satisfied his burden of proof pursuant to § 523(a)(6) of the Code.

Accordingly, judgment is rendered in favor of Plaintiff Baker pursuant to § 523(a)(2)(A). The Cognovit Note judgment in the amount of $36,426.33, plus interest on said amount at the rate of 10% per annum, is hereby rendered nondischargeable. Each party is to bear its respective costs.

**IT IS SO ORDERED.**