**In re Theodore M. GARVER, Debtor.**

Bankruptcy No. 94–11633.

Adv. No. 94–1226.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

April 11, 1995.

Richard G. Hardy, Ulmer & Berne, Cleveland, OH, for plaintiff.

Victor M. Javitch, Kristen G. Edwards, Javitch, Block, Eisen & Rathbone, Cleveland, OH, for defendant.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

In this voluntary Chapter 7 case, the matter before the Court is a Complaint to Determine Dischargeability of Debt filed by R.E. America (REA), an Ohio corporation, against Theodore M. Garver (the Debtor). The action specifically seeks to prevent the Debtor from obtaining a discharge of a $600,000.00 state court judgment, plus accrued interest, which was taken against the Debtor prepetition pursuant to § 523(a)(4) of the Bankruptcy Code [11 U.S.C. 523(a)(4)]. Upon a duly scheduled hearing on the matter, the following constitutes the Court's findings of fact and conclusions of law:

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) wherein the parties have stipulated that following a jury verdict in the state court, the parties are collaterally estopped and bound by the following facts:

*Malpractice*

A.   Plaintiff and Defendant had an attorney/client relationship giving rise to certain duties owed by Defendant to Plaintiff.

B.   Defendant breached certain of those duties.

C.   Plaintiff suffered damages as a proximate result of Defendant's breach.

*Contract*

D.   Defendant had entered into a contract with Plaintiff pursuant to which Defendant was to make a $600,000 matching cash contribution toward the acquisition of a corporation known as A.A. Gage.

E.   Defendant breached the aforesaid contract.

F.   Plaintiff suffered damages as a proximate result of Defendant's breach.

*Fraud*

G.   Defendant's actions did not constitute a fraud as to Plaintiff, and Plaintiff was therefore not entitled to punitive damages.

3.   The jury in the Common Pleas Court Case awarded damages totaling $600,000 in favor of the Plaintiff and against the Defendant.

4.   Following a hearing held on February 3, 1994 on Plaintiff's Motion for Prejudgment Interest and Costs, the presiding judge in the Common Pleas Court Case awarded prejudgment interest to Plaintiff pursuant to Ohio Rev. Code § 1343.03(A) from May 23, 1990 in the amount of $215,178.00.

5.   Plaintiff's Exhibit Nos. 46, 47 and 48 are true and correct copies of the three journal entries entered by the presiding judge on the docket of the Cuyahoga County Common Pleas Court with respect to the Common Pleas Court Case.

6.   The parties stipulate that § 523(a)(2) of the Bankruptcy Code will not serve as a basis for exception to discharge herein.

7.   The existence of the attorney-client relationship creates a fiduciary relationship between Plaintiff and Defendant.

8.   Defalcation was not an issue before the Common Pleas Court and consequently no finding was made on this subject in that proceeding.

9.   The sole issue to be decided by the Court is whether, on the agreed record submitted, an act of defalcation exists under § 523(a)(4) of the Bankruptcy Code.

10.   Each party shall provide the Court with a designation of the record which will identify those portions of the record which the Court should review in order to determine whether a defalcation exists under § 523(a)(4) of the Bankruptcy Code.

As the aforementioned stipulations indicate, the sole issue to be determined by this Court is whether an act of defalcation exists under § 523(a)(4) of the Code.   In pertinent part, that Code provision provides that:

§ 523.   Exceptions to discharge.

(a) A discharge under section 727 … of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. [11 U.S.C. § 523(a)(4) ].

In adjudicating dischargeability matters under § 523(a), the requisite standard of proof is the ordinary preponderance of evidence standard which must be satisfied by the complainant. *See, Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).   This particular Code section enumerates which type of debts are excepted from discharge in bankruptcy and is derived from § 17(a) of the former Bankruptcy Act (the Act).

Beyond the facts stipulated, it is undisputed that the Debtor, Theodore M. Garver is an attorney and previously acted as legal counsel to REA since approximately December of 1978.   While acting as counsel to REA he proposed a joint venture whereby he and REA would become partners and acquire a Michigan corporation known as A.A. Gage, Inc. (Gage).   The terms of the proposed ac-

quisition required, *inter alia,* that a $600,-000.00 cash contribution be made by REA and the Debtor to a holding company created by the Debtor in exchange for a fifty percent (50%) ownership interest in Gage, respectively. In order to effectuate the deal, REA transferred its $600,000.00 in cash to a company known as Fostoria–Brande Corporation (Fostoria) which was owned, in part, and controlled by the Debtor. As security for the $600,000.00 cash contribution made by REA, the Debtor executed a promissory note in favor of REA dated December 31, 1989, on behalf of Fostoria. At the time of the proposed acquisition of Gage and thereafter, the Debtor had a financial, business and professional interest in both Gage and Fostoria. The Debtor never made any cash contribution toward the acquisition of Gage. His requirement to do so is disputed by the parties. Prepetition, in March of 1992, REA filed a Complaint in state court against the Debtor alleging legal malpractice, breach of contract and fraud. Although the Debtor testified in the state court proceeding that he never intended to contribute $600,000.00 toward the acquisition of Gage, that court rendered its jury verdict finding that the Debtor committed legal malpractice and breached his agreement with REA to contribute a matching $600,000.00 toward the acquisition of Gage. The state court jury awarded REA $600,000.00 in damages. Upon further petition to that court, REA was awarded an additional $215,178.00 as prejudgment interest. On April 18, 1994, the Debtor filed his voluntary petition for relief under Chapter 7.

■ The Debtor contends that no defalcation occurred in this matter. He argues that all funds contributed by REA to the Gage transaction were used in their intended fashion. In that regard, he further asserts that no funds were ever mishandled, unaccounted for, misaccounted, or diverted from Gage. Additionally, the Debtor argues that, notwithstanding the state court's finding of legal malpractice against him, legal malpractice does not constitute a defalcation and that a breach of contract is not a defalcation.

In support of these contentions, the Debtor relies upon the Sixth Circuit's decision in *In re Interstate Agency, Inc.,* 760 F.2d 121 (6th Cir.1985). It is significant to note that the *Interstate* case relied upon by the Debtor was a decision based on provisions of the former Bankruptcy Act, with the Sixth Circuit construing provisions of § 17(a)(4) of the Act, rather than construing provisions of § 523(a)(4) of the current Bankruptcy Code which repealed § 17(a). It is also of significance to note that the Sixth Circuit cited to Black's Law Dictionary (5th Ed.1979) to provide it with a working definition for the term "defalcation". Therein, the Sixth Circuit noted:

> "Defalcation" is defined as encompassing embezzlement, the misappropriation of trust funds held in any fiduciary capacity and the failure to properly account for such funds. *Interstate,* at 125.

The more recent edition of Black's Law Dictionary (6th Ed.1990) defines "defalcation" as follows:

> The act of a defaulter, act of embezzling; *failure to meet an obligation;* misappropriation of trust funds or money held in any fiduciary capacity; failure to properly account for such funds. Commonly spoken of officers of corporations or public officials.
> *For purposes of Bankruptcy Code section making nondischargeable a debt resulting from fraud or defalcation by debtor while acting in fiduciary capacity, is failure to meet an obligation,* misappropriation of trust funds or money held in any fiduciary capacity, and failure to properly account for such funds. *In re Anderson,* Bankr. N.D.Ill., 64 B.R. 331, 334. [Black's Law Dictionary (6th Ed.1990) ] (Emphasis added.)

■ The Debtor's contention that the funds transferred by REA to Fostoria during the Gage transaction were fully accounted for is not dispositive. As stated above, the definition of "defalcation" is more expansive than an accounting of funds. It includes a failure to meet an obligation which is what occurred here. It is stipulated that the Debtor breached both his fiduciary obligation and the contract with his client. Other instances in which the Debtor failed to meet his obligations may be found in the Canons Of Professional Ethics For Attorneys. Specifically,

Canon 5 addresses several activities of proscribed conduct which show that the Debtor failed to meet his fiduciary obligations.

Disciplinary Rule 5–101 requires a lawyer to refuse employment when his or her interests may impair his or her independent judgment. Disciplinary Rule 5–104 proscribes entering into a business relationship with a client "if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client unless the client has consented after full disclosure." Several Ethical Considerations appear to impact the subject of this adversary proceeding: EC 5–1, Loyalty to client; EC 5–2, Conflict of interests between attorney and client; EC 5–3, Conflicting property interests; EC 5–18, Loyalty of corporate attorney and EC 5–21, influence of third parties on attorney.

As may be observed from the more recent definition of "defalcation," it is clear that it offers a more expansive definition than the earlier edition of Black's Law Dictionary and, remarkably, affords a definition of "defalcation" within the context of bankruptcy dischargeability issues. Although *Interstate* presents a decision of the Sixth Circuit regarding a construction of defalcation in a dischargeability framework, it actually is one which does not support the Debtor's position. That is, the *Interstate* decision construed the elements under § 17(a)(4) of the former Bankruptcy Act and not under the current Code. The Sixth Circuit was not construing § 523(a)(4) in the *Interstate* opinion, the successor provision for the former § 17(a)(4). Therein, the Circuit held that to establish nondischargeability of debt incurred by the debtor while acting in a fiduciary capacity, it was necessary to show the existence of an express trust status to the property in issue, that the debtor was acting in a fiduciary capacity, and that the debtor breached that relationship by at least defalcation of funds. *Id.*, at 124, *citing, Davis v. Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). In construing the above elements, the Sixth Circuit concluded in *Interstate* that the subject debt was nondischargeable respecting both creditors involved. *See also,*

*Ragsdale v. Haller,* 780 F.2d 794 (9th Cir. 1986).

The proscribed terms of "delfacation", "embezzlement", or "larceny" are not defined under the Code. Nor does § 523(a)(4) require an element of "intent" to be satisfied for a nondischargeability finding. The objective criteria used by many, if not most courts, include the same elements addressed by the Sixth Circuit in *Interstate:* (1) a fiduciary relationship based upon the existence of a trust proved by the creditor and (2) that a defalcation occurred while the fiduciary relationship existed. As one commentator notes within a § 523(a)(4) context:

> A trust will only be considered if it is an "express" or "technical" trust arising out of the relationship and not a "statutory" or "constructive" trust created by the act out of which the debt arose in the first place. In other words, if there is a general trust established by state law between partners in a partnership or between an officer or director and her corporation, then a fiduciary relationship exists. However, if the trust arose only by statute when the fraud or defalcation was committed, then the trust is insufficient to establish the requisite fiduciary relationship.[1]

In applying these elements under § 523(a)(4), it is important to note that the requirement of an express or technical trust does not apply to situations which are nothing more than debtor-creditor relationships. *In re Gans,* 75 B.R. 474 (Bankr.S.D.N.Y. 1987); *Matter of Harasymiw,* 97 B.R. 924 (N.D.Ill.1989), *aff'd* 895 F.2d 1170 (7th Cir. 1990) (contractual relationship from a loan transaction is insufficient to create a trust); *In re Short,* 818 F.2d 693 (9th Cir.1987) (ordinary commercial relationships are excluded from reach of § 523(a)(4)). Certain relationships, however, will usually result in the finding of a trust. An attorney can expect a trust to exist in favor of a client even in the absence of an express agreement. *See, Kwait v. Doucette,* 81 B.R. 184 (D.Mass. 1987); *F.D.I.C. v. Mmahat,* 907 F.2d 546 (5th Cir.1990), *cert. denied* 499 U.S. 936, 111 S.Ct. 1387, 113 L.Ed.2d 444 (1991) (actions by

---

1. *Bankruptcy,* Epstein, *et al.,* § 7–28, p. 518    (1993).

debtor savings and loan's general counsel urging corporation to make improper loans so he could earn fees was defalcation while in a fiduciary relationship.); *Interstate, supra,* (Sixth Circuit found a fiduciary relationship existed between an insurance agent and insurance company for premiums collected).

In the matter at bar, a special relationship existed between the Debtor and REA, namely, attorney-client. Moreover, the parties have stipulated to the existence of a fiduciary relationship which satisfies the first of the two-pronged test under § 523(a)(4). That is, an express or technical trust exists in favor of REA. The only remaining element is whether a defalcation occurred while the fiduciary relationship existed. Referring, again, to the definition of defalcation quoted above, the definition is inclusive of a "failure to meet an obligation". Moreover, the definition clearly provides that "For purposes of Bankruptcy Code section making nondischargeable a debt resulting from fraud or defalcation by the debtor while acting in a fiduciary capacity is failure to meet an obligation ...". In this regard, the record not only shows a stipulated fiduciary relationship between the parties, it also contains stipulations which reflect that the Debtor breached certain of his duties arising under the attorney-client relationship, in addition to the Debtor having breached the contract with his client (REA) on the Gage transaction. (*See, Stipulations,* filed March 8, 1995). This particular stipulation, combined with the above definition of "defalcation" which includes a failure to meet an obligation, is sufficient to establish the second prong of the § 523(a)(4) test for defalcation, rendering the subject debt nondischargeable. These matters having been established by both the stipulation and the definition of "defalcation", the subject debt is hereby found to be nondischargeable.

**IT IS SO ORDERED.**