**In re Theodore M. GARVER, Debtor.**

**R.E. AMERICA, INC., Plaintiff–Appellee,**

**v.**

**Theodore M. GARVER, Defendant–Appellant.**

**No. 96–3447.**

United States Court of Appeals,
Sixth Circuit.

Argued April 22, 1997.

Decided June 19, 1997.

Eric H. Zagrans (argued and briefed), Elyria, OH, for Defendant–Appellant.

Richard G. Hardy (argued and briefed), Ulmer & Berne, Cleveland, OH, for Plaintiff–Appellee.

Before: JONES, SUHRHEINRICH, and SILER, Circuit Judges.

## OPINION

SUHRHEINRICH, Circuit Judge.

In this case we must decide whether a state court jury decision holding attorney Theodore Garver ("Garver") liable to R.E. America, Inc. ("REA") for $600,000 under breach of contract and fiduciary duty is dischargeable under the United States Bankruptcy Code ("Bankruptcy Code"). The bankruptcy court refused to discharge the debt, holding that it was the result of defalcation by Garver.[1] The district court affirmed. For the following reasons, we **REVERSE**.

## I. BACKGROUND[2]

Garver is an attorney and former partner in the Cleveland, Ohio office of Jones, Day, Reavis & Pogue. As a tax specialist, Garver developed numerous long term clients, including REA. In late 1989, while acting as counsel to REA, Garver proposed a business transaction between REA and himself to acquire a struggling company which needed an infusion of capital and new management. REA agreed to participate in Garver's proposed venture. Under their agreement, each party would contribute $600,000 for 50% ownership in a company called A.A. Gage ("Gage"). When the transaction was completed, however, REA had invested $600,000 in exchange for an unsecured promissory note in the amount of $600,000 executed by Garver on behalf of the Fostoria Braude Corporation, a holding company which Garver controlled.[3] Fostoria Braude, in turn, owned 100% of the Gage stock. Garver, meanwhile, had contributed only $17,500 toward the purchase of Gage.

During the following year, Gage became insolvent and filed for bankruptcy in late 1991. As a result, REA lost its investment and sued Garver in state court, alleging legal malpractice, breach of contract, and fraud. Specifically, REA alleged that Garver, as a business partner in the transaction, breached his contractual duty to contribute $600,000 to acquire Gage and, as attorney for REA, breached various fiduciary duties owed to REA under the attorney-client relationship. In the state court trial, Garver testified that he never intended to contribute $600,000 to the venture. Rather, according to Garver, the deal only required him to contribute his "sweat equity" to Gage. Thus, under Garver's version of the agreement REA carried nearly the entire financial risk of the deal. Not surprisingly, the jury believed REA and concluded that Garver: 1) committed legal malpractice by breaching unspecified fiduciary duties owed to REA as his client and 2) breached his contract with REA to contribute $600,000 to the venture. The jury also specifically found that Garver *had not* committed fraud. The jury then awarded REA $600,000 in damages.[4]

Garver subsequently filed a voluntary petition under Chapter 7 of the Bankruptcy Code. REA, as a judgment creditor, responded by filing this adversary proceeding in the bankruptcy court to determine whether Garver could discharge his debt to REA. The dischargeability of Garver's obligation turned entirely upon whether the state court judgment was the result of "defalcation" within the meaning of 11 U.S.C. § 523(a)(4). The

---

1. The bankruptcy court's opinion is published at 180 B.R. 181.

2. Although Garver disputes a portion of the following facts, both parties agree that given the state court jury decision in favor of REA these facts must be taken as true for purposes of this appeal.

3. REA sued on this promissory note and won, but did not recover any money because of Fostoria Braude's insolvency. From its inception, Fostoria Braude contained no assets other than the stock of Gage.

4. Adding prejudgment interest, the state court ordered Garver to pay $815,178 to REA.

bankruptcy court, holding that the debt did result from defalcation, refused to discharge it. The district court affirmed and Garver appeals the district court decision.

## II. ANALYSIS

■ In considering an appeal from a district court decision which is on appeal from a bankruptcy court, this court independently reviews the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *Longo v. McLaren (In re McLaren),* 3 F.3d 958, 961 (6th Cir.1993).

Although many debts are dischargeable under the Bankruptcy Code, § 523(a)(4) provides that "a discharge under [the Bankruptcy Code] does not discharge an individual debtor from any debt ... for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C.A. § 523(a)(4) (West 1993 & Supp.1997). It is undisputed that no embezzlement or larceny occurred in this case and the state court jury specifically found no fraud. Therefore, to avoid discharge of the debt in bankruptcy, REA must show by a preponderance of the evidence that the debt was incurred through defalcation while acting in a fiduciary capacity. *See Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991) (adopting preponderance of the evidence standard for § 523(a) discharges).

The federal courts are not in perfect agreement as to the requirements necessary to prove defalcation under § 523(a)(4). A review of the cases reveals that the courts generally agree that defalcation requires: 1) a fiduciary relationship; 2) breach of that fiduciary relationship; and 3) a resulting loss. They often differ, however, as to the nature of the fiduciary relationship necessary to trigger the defalcation provision of § 523(a)(4).

Some federal courts construe the term "fiduciary capacity" found in the defalcation provision of § 523(a)(4) narrower than they construe the term "fiduciary relationship" as used in the legal profession generally. *Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1372 (10th Cir.1996) (holding general fiduciary duties of confidence, trust, loyalty, and good faith insufficient to establish the necessary fiduciary relationship for purposes of § 523(a)(4)); *Clark v. Allen (In re Allen)*

206 B.R. 602, 606 (Bankr.M.D.Fla.1997) (noting that the traditional meaning of the term fiduciary is far too broad for bankruptcy purposes.); *Ducey v. Doherty (In re Ducey),* 160 B.R. 465, 469 (Bankr.D.N.H.1993) (noting that the term fiduciary in § 523(a)(4) is narrower in scope than the word as traditionally used under state law); *Hartwood Aviation, Inc. v. Hamilton (In re Hamilton),* 147 B.R. 779, 783 (Bankr.D.Colo.1992) (holding a duty of care, without more, insufficient to satisfy the fiduciary relationship element of § 523(a)(4). The federal courts adopting this narrow interpretation of fiduciary for purposes of the Bankruptcy Code generally hold that an express or technical trust is necessary to trigger the defalcation provision of § 523(a)(4). *Fowler Bros.,* 91 F.3d at 1371 (holding that an express or technical trust must exist to establish a fiduciary relationship under § 523(a)(4)); *Clark,* 206 B.R. at 606 (requiring a plaintiff to prove the existence of an express or technical trust to satisfy the fiduciary element of § 523(a)(4)); *Tillman v. Mason (In re Mason),* 191 B.R. 50, 54 (Bankr.S.D.N.Y.1996) (requiring an express or technical trust relationship between the debtor and aggrieved creditor to trigger application of § 523(a)(4)).

Other federal courts construe the term fiduciary capacity in § 523(a)(4) more broadly, holding that the attorney-client relationship by itself establishes the necessary fiduciary relationship for purposes of the defalcation provision. *Tudor Oaks Ltd. Partnership v. Cochrane (In re Cochrane),* 179 B.R. 628, 634 (Bankr.D.Minn.1995) (agreeing with those courts that hold an attorney's professional duties of fidelity, good faith, and utmost fairness to a client sufficient to satisfy the fiduciary relationship element of § 523(a)(4)); *Tai v. Charfoos (In re Charfoos),* 183 B.R. 131, 136–38 (Bankr. E.D.Mich.1994) (holding that breach of an attorney's duty of disclosure to a client in the context of self-dealing constitutes breach of fiduciary relationship for purposes of § 523(a)(4)). These courts generally do not require an express or technical trust to establish the fiduciary relationship element necessary for the defalcation provision of § 523(a)(4). *Tudor Oaks,* 179 B.R. at 634 (holding the deposit of a specific res with the attorney unnecessary for purposes of

§ 523(a)(4) because "the professional's fiduciary duty of forbearance is not limited to situations involving segregated, entrusted assets").

■ Although this court has not yet explicitly identified the nature of the fiduciary relationship required under the defalcation provision of § 523(a)(4), we are guided by our previous decision in *Capitol Indem. Corp. v. Interstate Agency, Inc. (In re Interstate Agency)*, 760 F.2d 121 (6th Cir.1985), in siding with those courts which adopt the narrow interpretation of the term. In *Interstate Agency*, we defined defalcation as "encompassing embezzlement, the *'misappropriation of trust funds* held in any fiduciary capacity,' and the 'failure to properly account for such funds.'" *Id.* at 125 (quoting *Black's Law Dictionary*, 375 (5th ed.1979)) (emphasis added).[5] We believe that this definition, which focuses upon the embezzlement, misappropriation, or failure to properly account for "trust funds", necessarily implies the existence of an express or technical trust relationship. *See Highland v. Hix (In re Hix)*, 161 B.R. 401, 404 (Bankr.N.D.Ohio 1993) (citing *Interstate Agency*, 760 F.2d 121, to hold that plaintiff must prove an express trust status to establish the nondischargeability of a debt under § 523(a)(4)). The attorney-client relationship, without more, is insufficient to establish the necessary fiduciary relationship for defalcation under § 523(a)(4). Instead, the debtor must hold funds in trust for a third party to satisfy the fiduciary relationship element of the defalcation provision of § 523(a)(4).

■ In this case, despite the absence of an express trust, the parties stipulated to the existence of a fiduciary relationship satisfying the defalcation provision of § 523(a)(4). *In re Garver*, 180 B.R. 181, 186 (Bankr. N.D.Ohio 1995). The only remaining question was whether the debt that Garver owed REA was the result of defalcation. In holding that Garver's debt to REA was the result of defalcation, the bankruptcy court referenced the Sixth Edition of *Black's Law Dictionary*, which broadly defines defalcation as, *inter alia*, "failure to meet an obligation" while acting in a fiduciary capacity. *Garver*, 180 B.R. at 184 (quoting *Black's Law Dictionary* (6th Ed.1990)).

■ We find that the bankruptcy court erred in relying upon this dictionary definition of defalcation because the dictionary definition improperly expands upon our previous definition of the term contained in *Interstate Agency*. As noted above, *Interstate Agency* defined defalcation as the embezzlement, misappropriation of trust funds held in a fiduciary capacity, and failure to properly account for trust funds. *Interstate Agency*, 760 F.2d at 125. This definition did not include the broader language of "failure to meet an obligation" while acting in a fiduciary capacity. The mere failure to meet an obligation while acting in a fiduciary capacity simply does not rise to the level of defalcation; an express or technical trust must also be present.[6] Although we recognize that *Interstate Agency* referred to the previous Fifth Edition of *Black's Law Dictionary* for its definition of defalcation, *Interstate Agency*, 760 F.2d at 125, we decline to extend that definition to reflect the broader language contained in the more recent Sixth Edition of *Black's Law Dictionary*.

---

5. Although *Interstate Agency* defined defalcation under § 17(a)(4) of the old Bankruptcy Act, the precursor to § 523(a)(4), neither party argues, and we conclude, that this distinction is irrelevant to our analysis.

6. Garver argues that the definition of defalcation contained in the Sixth Edition of *Black's Law Dictionary* expands the concept of defalcation to an untenable level because any debt resulting from an attorney's failure to meet a fiduciary obligation would automatically become nondischargeable under the Bankruptcy Code. In light of our holding today, Garver's fear is unwarranted. Because the attorney-client relationship by itself is insufficient to create the necessary fiduciary relationship for purposes of the defalcation provision of § 523(a)(4), an attorney's breach of fiduciary duty, without more, does not constitute defalcation. Absent an express or technical trust, an attorney's legal malpractice, like all other types of professional malpractice, remains dischargeable under the Code. *See Freeman v. Frick (In re Frick)*, 207 B.R. 731, 738 (Bankr. N.D.Fla.1997) ("[T]o extend the scope of Section 523(a)(4) generally to acts of malpractice or unethical conduct of professionals goes well beyond the longstanding precedents of courts in this circuit and the U.S. Supreme Court."). While attorneys should perhaps be held to a higher standard than other professionals, that is a decision for Congress, not the federal courts, to make.

In sum, under *Interstate Agency* the defalcation provision of § 523(a)(4) is limited to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor. *See Fowler Bros.*, 91 F.3d at 1371. Defalcation then occurs through the misappropriation or failure to properly account for those trust funds. *Interstate Agency*, 760 F.2d at 125. Although Garver stipulated to the existence of a fiduciary relationship sufficient to satisfy the fiduciary relationship aspect of the defalcation provision of § 523(a)(4), we hold under the facts of this case that Garver did not commit defalcation. REA does not contend that Garver misappropriated or improperly accounted for its $600,000. To the contrary, the funds were merely lost because the venture turned out to be a poor investment. Because all funds in this case were properly accounted for, no defalcation occurred, and the debt is dischargeable under Chapter 7 of the Bankruptcy Code.

Accordingly, the decision of the district court is **REVERSED** with directions to discharge the debt.