**In re Michael J. STROJNY, Debtor.**

**Ingham County, a Michigan Municipal Corporation, Plaintiff,**

v.

**Michael J. Strojny, Defendant.**

**Bankruptcy No. GT 04–13254. Adversary No. 05–80378.**

United States Bankruptcy Court, W.D. Michigan.

Jan. 5, 2006.

---

Richard D. McNulty, Esq., Lansing, MI, for Plaintiff Ingham County.

Wallace H. Tuttle, Esq., Traverse City, MI, for Debtor–Defendant Michael J. Strojny.

## OPINION REGARDING DISCHARGEABILITY OF DEBT

JAMES D. GREGG, Bankruptcy Judge.

### I. *JURISDICTION*

This court has jurisdiction over this bankruptcy case. 28 U.S.C. § 1334. This bankruptcy case and all related proceedings have been referred to this bankruptcy court for decision. 28 U.S.C. § 157(a) and L.R. 83.2(a) (W.D.Mich.). This adversary proceeding is to determine the dischargeability of a debt and is therefore a core proceeding. 28 U.S.C. § 157(b)(2)(I). This opinion constitutes the court's findings of fact and conclusions of law required to be made after the conclusion of the Plaintiff's proofs. FED. R. BANKR. P. 7052(c).

### II. *ISSUES*

Does the Debtor owe the Plaintiff a nondischargeable debt under 11 U.S.C. § 523(a)(2)(A), (a)(4) and/or (a)(6)? Under FED. R. BANKR. P. 7052(c), should the court determine the dischargeability of the debt at the conclusion of the Plaintiff's evidentiary proofs?

### III. *FACTS*

On November 14, 2000, Michael J. Strojny, d/b/a Allied Land Services, a sole proprietorship, ("Debtor"), submitted a bid to the Ingham County Parks Department pertaining to the so-called Hawk Island Project. Exh. 1. Subsequently, an Agreement ("contract") between the Ingham County Parks Department ("Ingham County") and the Debtor was executed. The Debtor signed the contract on January 10, 2001; Ingham County signed the contract on March 27, 2001. The original contract was for "Beach Dredging and Grading" in the amount of $329,600.00. Exh. 1. In accordance with the contract, the Debtor obtained a Performance Bond from the National American Insurance Company. The Debtor also obtained a Payment Bond from the same insurance company. Exh. 1.

In accordance with Change Order No. 1, dated April 24, 2001, the amount of the contract was reduced to $259,600.00. Subsequently, in accordance with Change Order No. 2, dated September 26, 2001, the contract price was increased to the final amount of $264,600.00. Exh. 2.

As work was completed by the Debtor, the contract provided for progress payments. In accordance with the first Application for Payment submitted on March 1, 2001 by the Debtor, and approved by the Ingham County Project Manager, the Debtor received $48,865.50. Exh. 3. The second Application for Payment was submitted on April 4, 2001 by the Debtor. The application was approved by the Ingham County Project Manager on April 13, 2001, in the amount of $61,986.15. When read together, the amounts on the first and second Applications for Payment are consistent. Exh. 4.

The third Application for Payment was submitted by the Debtor on May 5, 2001. The Ingham County Project Manager approved the payment, on May 21, 2001, in the amount of $78,678.00. Exh. 5. Comparing the second and third Applications for Payment, it is readily apparent that a mistake in the calculations occurred. On the third payment, the line for "less previous payments" was stated to be $61,986.15. A quick perusal of the second Application for Payment discloses that the Debtor had previously received $110,851.65. The Debtor erroneously carried over the "amount due this application" from the second application to the "less previous payments" in the third application.[1] This resulted in a $48,865.50 difference.

Without question, the Debtor made a mistake in calculating the amount due in the third Application for Payment. To further compound the Debtor's mistake, the Ingham County Project Manager failed to identify the mistake.[2]

This mistake was carried over to the fourth Application for Payment, Exh. 6, the fifth Application for Payment, Exh. 7, and the final Application for Payment, Exh. 8. In each instance, both the Debtor and the Ingham County Project Manager failed or neglected to recognize the mistake.

In accordance with the testimony of Robert C. Moore, Ingham County Director of Parks, it was the Ingham County Project Manager's responsibility to review and approve all progress payments. Moore testified that it was not Moore's responsibility. He further stated that Ingham County did not have financial controls to determine when a contractor, such as the Debtor, had been fully paid in regard to a given contract. Ingham County only maintained records of the funds paid on the *entire* project, which often consists of numerous separate contracts. Because Ingham County did not keep track of the payments, it failed or neglected to realize that the Debtor had been overpaid.

After all payments to the Debtor had been made, Ingham County realized that a mistake had been made. Total payments received by the Debtor equaled $313,465.40. Exh. 9. Regretfully for Ingham County, it released the Performance Bond and the Payment Bond and could not make any claim thereunder.

On August 27, 2002, the Ingham County Project Manager sent the Debtor a letter requesting reimbursement of the $48,865.50 overpayment within fourteen days. Exh. 13. In that letter, the Ingham County Project Manager identified the miscalculation which occurred, in accordance with the second and third Applications for Payment. Moore, who had over-

---

1. Both lines state "$61,986.15." On the third Application for Payment, "less previous payments" should have been $110,851.65.

 During this time, Debtor lived and maintained his office at his house in Levering, Michigan, approximately ten miles south of the Mackinac Bridge. During the Hawk Island Project, the Debtor was living in Lansing, Michigan. At this time, he possessed incomplete documents and records because he was supervising and working on the project. The court takes judicial notice that Lansing, Michigan and Levering, Michigan are approximately 230 miles apart. Fed. R. Evid.

201. The Debtor was unable to carefully review all documents, including the Goldleaf Escrow records, Exh. 19, to prepare the Applications for Payment.

2. The court finds it was the responsibility of the Project Manager to monitor and approve all progress payments. Indeed, this occurred on the fifth Application for Payment when an adjustment was made by the Project Manager to reduce the amount paid to the Debtor. If the Project Manager had corrected the third Application for Payment, there would have been no overpayment.

all supervisory authority over the project, believed that a "clerical error" had occurred. He originally assumed that the Project Manager had made an error. Later, based upon *subsequent events,* Moore changed his opinion and came to believe that the Debtor had engaged in fraudulent conduct.

After telephone conversations between the parties, the Debtor stated he intended to reimburse the overpayment by obtaining a loan from National City Bank. Exh. 14. The Debtor requested forty-five days for the loan to be approved. *Id.* Shortly thereafter, by correspondence dated October 11, 2002, the attorneys for Ingham County sent the Debtor a letter setting forth Ingham County's understanding of the repayment terms. Exh. 15.

Although the Debtor intended to reimburse the overpayment, and he was successful in subsequently procuring a loan, his business was in trouble. Rather than utilizing the loan proceeds to repay Ingham County, the Debtor was forced to pay other business bills in a futile attempt to keep his business alive. Therefore, Ingham County was not paid.

On or about February 27, 2003, Ingham County filed a Complaint against the Debtor in the State of Michigan, Circuit Court for the County of Ingham, seeking judgment for $48,865.50. Exh. 10. The Debtor, representing himself, filed an answer on or about May 1, 2003. This pro se answer set forth a number of asserted affirmative defenses, none of which were legally valid. Apparently, the Debtor subsequently recognized that his defenses were of little, if any, weight. At a state court hearing on August 20, 2003, the Debtor stipulated to a judgment in the principal sum of $48,865.50. Exh. 12.

When the judgment was not paid, Ingham County obtained an order from the State of Michigan, Ingham County Circuit Court, to seize the Debtor's property. Exh. 16. Not surprisingly, the Debtor filed for bankruptcy relief on October 28, 2004.

At the trial, the court heard the testimony of the Debtor and Robert C. Moore, Ingham County Director of Parks. Both witnesses were credible in all respects.

## IV. *DISCUSSION*

### A. *Judgment on Partial Findings.*

If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. Such a judgment shall be supported by findings of fact and conclusions of law as required by subdivision (a) of this rule.

Fed. R. Bankr. P. 7052(c).

██ This rule permits, but does not require, a court to enter judgment after the conclusion of a Plaintiff's proofs in nonjury trials. If a court decides to enter a judgment, it must make explicit findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052(a) ("the court shall find the facts specially and state separately its conclusions of law thereon"). "A judgment on partial findings under Rule 52(c) is made after the court has heard all the evidence bearing on the issue of fact ...." Wright & Miller, 9A Fed. Prac. & Proc. Civ.2d § 2573.1.

██ Use of a Rule 52(c) motion may be valuable in an exception to discharge adversary proceeding, most notably when it appears that a plaintiff has failed to estab-

lish the *prima facie* evidence necessary to prove the nondischargeable nature of a debt. In this adversary proceeding, Ingham County has failed to prove all necessary elements with regard to *any* of the three theories it has asserted. It is therefore appropriate for this court to render judgment without requiring the Debtor to present countervailing evidence.

### B. *Amount of Debt.*

■ In a nondischargeable debt adversary proceeding, it is permissible for a bankruptcy court to determine the existence of a debt and, if necessary, the amount of the debt. *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 965–66 (6th Cir.1993). However, in those instances where a state court judgment has been entered, the bankruptcy court need not determine the amount of the debt. The state court judgment is entitled to *res judicata* effect regarding the *amount* of the debt. *Matter of Redburn*, 193 B.R. 249, 258 (Bankr.W.D.Mich.1996) ("While the ultimate issue of nondischargeability remains undecided in the related chapter 7 case, the *amount* of the debt was fixed by the state court judgment and that judgment is binding on this court.") (emphasis in original) (citing *Rally Hill Productions, Inc. v. Bursack (In re Bursack)*, 65 F.3d 51, 53 (6th Cir.1995); *Sparks v. Adams (In re Adams)*, 147 B.R. 407, 418 n. 27 (Bankr. W.D.Mich.1992); *Brown v. Sachs (In re Brown)*, 56 B.R. 954, 959 (Bankr. E.D.Mich.1986)). The state court entered a judgment against the Debtor in the amount of $48,865.50, plus interest and costs. Exh. 12. That state court judgment conclusively establishes the amount of the debt in this nondischargeability litigation.

### C. *Fraud— § 523(a)(2)(A).*

■ Section 523(a)(2)(A) of the Bankruptcy Code[3] excepts from discharge any debt "for money, property, [or] services ... to the extent obtained by false pretenses, a false representation, or actual fraud ...." To prevail, a creditor must prove that:

1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth;

2) the debtor intended to deceive the creditor;

3) the creditor justifiably relied upon the false representation; and

4) its reliance was the proximate cause of the loss.

*Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir.1998). The creditor, Ingham County, must prove each and every element by a preponderance of evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

■ Based upon the findings of fact, the Debtor made a material misrepresentation at the time the third Application for Payment was submitted on May 5, 2001. Exh. 5. Although a mistake was made in the calculation, and although the Debtor was not at his office in Levering, Michigan, and he was unable to review other related documents, the Debtor may have made the representation with "gross recklessness as to its truth." However, there is absolutely nothing in the record that leads this court to believe that the Debtor intended to deceive Ingham County. Further, Ingham County failed to justifiably rely on the Debtor's erroneous calculation. The Project Manager could easily see the mistake on the face of the third Application for

---

**3.** The Bankruptcy Code in existence at the time the case was filed is set forth in 11 U.S.C. §§ 101–1330, and is referred to in this opinion as "§ ___."

Payment itself. Exh. 5. The Project Manager had a responsibility to review the Applications for Payment. He failed to adequately review the third application, thereby contributing to, if not causing, the loss.

█ Ingham County has failed to prove all elements to establish a nondischargeable debt based upon fraud. An after-the-fact suspicion about a miscalculation in filling out a form does not a fraud make.

D. *Breach of Fiduciary Obligation— § 523(a)(4).*

 Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity." Under this subsection, determination of nondischargeability requires a fiduciary relationship, a breach of that fiduciary relationship, and a resulting loss. *R.E. America. Inc. v. Garver (In re Garver)*, 116 F.3d 176, 178 (6th Cir.1997). For purposes of § 523(a)(4), there must exist "an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *In re Garver*, 116 F.3d at 179. Whether an express trust relationship exists must be determined by reference to state law. See, e.g., *Capitol Indemnity Corp. v. Interstate Agency, Inc. (In re Interstate Agency, Inc.)*, 760 F.2d 121, 124 (6th Cir.1985) (the Michigan Insurance Code by statute "clearly establishes an insurance agency relationship as an express trust fiduciary relationship").

 In this adversary proceeding, Ingham County asserts the so-called Michigan Builders' Trust Fund Act imposes an express trust upon the Debtor's receipt of the contract funds. If the Michigan Builders' Trust Fund Act was applicable, Ingham County would have a compelling argument. *Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 252 (6th Cir.1982) ("The Michigan Building Contract Fund Act imposes a 'trust' upon the building contract fund paid by any person to a contractor or subcontractor for the *benefit of the person making the payment*, contractors, laborers, subcontractors and materialmen") (emphasis added).

Ingham County readily concedes that the contract with the Debtor was for a public project. Exh. 1. The Michigan Builders' Trust Fund Act does not apply to contracts for public projects. *Air Products & Chemicals, Inc. v. J.F. Cavanaugh Co. (In re Certified Question from the U.S. District Court)*, 411 Mich. 727, 311 N.W.2d 731, 733 (1981) (The Michigan Builders' Trust Fund Act "applies only to private construction contracts. It has no applicability to public construction contracts.").

The overpayment made by Ingham County to the Debtor was therefore not subject to the Michigan Builders' Trust Fund Act. Ingham County's theory that the debt is nondischargeable under § 523(a)(4) is without merit.

E. *Willful and Malicious Injury to Property of Another— § 523(a)(6).*

█ Section 523(a)(6) excepts from discharge any debt based upon "willful and malicious injury by the debtor to ... the property of another entity." The plain language of the statute requires that the alleged injury be *both* willful and malicious for a debt to be nondischargeable. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir.1999).

█ First, there is no evidence whatsoever that the Debtor caused injury to the *property* of Ingham County. This court rejects any notion that the mistaken overpayment made by Ingham County to the Debtor constituted property which belonged to Ingham County.

Second, assuming arguendo that the overpayment somehow remained the prop-

erty of Ingham County, any "willful and malicious" theory is soundly rejected by this court. The Supreme Court has held that the "willful" requirement under § 523(a)(6) is only met from an act "done with the actual intent to cause injury", which is an act similar to an intentional tort. *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998). The factual record lacks any evidence whatsoever that the Debtor intended to cause injury to Ingham County or that something akin to an intentional tort was committed.

Third, § 523(a)(6) requires the act by a debtor to be "malicious." In this subsection, "malicious means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent." *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 308 (6th Cir. BAP 2004) (quoting *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986) (internal quotation marks omitted)). In this adversary proceeding, there is no evidence that the Debtor disregarded his duties without a just cause or a reasonable excuse. A mistake in a calculation occurred, nothing more and nothing less. Ingham County's request for a nondischargeable debt under § 523(a)(6) fails.

## V. *CONCLUSION*

Ingham County's attempt to grasp faulty legal platforms supported by inadequate factual pillars is disfavored by this court. The Debtor's debt to Ingham County is discharged. Ingham County has not demonstrated, by preponderance of evidence, the requisite proofs to obtain an exception to discharge under § 523(a)(2)(A), (a)(4) and/or (a)(6) of the Bankruptcy Code.