**In re Larry Joseph WATERS, Debtor.**

**Billie J. Metcalfe, Julia M. Metcalfe, and Johnny D. Metcalfe, Plaintiffs,**

**v.**

**Larry Joseph Waters, Defendant.**

**Bankruptcy No. 98–34649–JDL.**

**Adversary No. 99–0042.**

United States Bankruptcy Court, W.D. Tennessee, Western Division.

Oct. 14, 1999.

---

Austin B. Byrd, Memphis, Tennessee, for plaintiffs.

Paul E. Lewis, Millington, Tennessee, for defendants.

## OPINION

JENNIE D. LATTA, Bankruptcy Judge.

In this adversary proceeding, the plaintiffs seek a determination that the debtor/defendant may not discharge a judgment awarded to them for punitive damages arising out of a legal malpractice case. The plaintiffs assert that the judgment is not dischargeable under any of three exceptions to discharge, 11 U.S.C. § 523(a)(2), (4), or (6). Plaintiffs have moved for judgment on the pleadings or in the alternative, for summary judgment. The defendant has not filed a counter-motion, but agrees that there are no disputed issues of fact and thus that the matter may be determined without trial. Neither party has introduced matters outside the pleadings for consideration by the court. The court concludes that judgment should be entered for the defendant on each of the Plaintiffs' theories of recovery. This is a core proceeding. 28 U.S.C. § 157(b)(2).

### I.

The following factual allegations of the amended complaint are admitted in defendant's answer:

In September 1986, plaintiff Billie Metcalfe was 16 years of age when she was a passenger in a car that was involved in an automobile accident. She sustained injuries including a broken leg, a concussion, facial cuts and had a pin inserted in her hip. Plaintiff Billie Metcalfe and her parents, Plaintiffs Julia and Johnny Metcalfe hired Defendant Larry Waters to represent them in connection with the accident.

In September 1987, Defendant Waters filed a complaint on behalf of the Plaintiffs against the driver of the vehicle Billie Metcalfe had been riding in, the driver's parents, and several other defendants. On March 15, 1990, Defendant Waters non-suited the Complaint

as he was not prepared on the day of trial. He refiled the Complaint on March 6, 1991, but he did not pay the filing fee or properly issue summons. The Complaint was dismissed by the trial court against some of the defendants in December 1992 due to the expiration of the statute of limitations. It was dismissed as to the remaining defendants on May 14, 1993, when Defendant Waters failed to appear for the trial.

Defendant Waters lied to the Plaintiffs about the status of the case for several months, telling them it was still pending even though he knew it had been dismissed. When he finally informed the Plaintiffs that the case had been dismissed, he did not state the reason for dismissal, but told them it was worth appealing.

The Plaintiffs initiated a legal malpractice suit in state court against Defendant Waters. [A copy of the state court complaint is attached to the adversary complaint as Exhibit A.]

In the amended answer to his complaint and in his testimony, Waters admitted that he failed to apprise the plaintiffs of the status of their case, failed to adequately prepare for trial, failed to refile suit properly after taking a non-suit, failed to file summons properly, failed to appear the second time the case was set for trial, and failed to file a notice of appeal on behalf of the plaintiffs. Defendant Waters conceded that his failure to inform the plaintiffs that the case had been dismissed was an intentional, fraudulent, malicious and/or reckless effort to conceal his mistakes. [A copy of the amended answer filed in the state suit is attached to the adversary complaint as Exhibit B.]

At trial, the court directed a verdict for the plaintiffs on liability. The jury returned a verdict against Defendant Waters and his co-defendant in the amount of $450,000 in compensatory damages. The verdict also included $100,000 punitive damages against Defendant Waters only. [A copy of the Jury Verdict is attached to the adversary complaint as Exhibit C.]

In denying defendants' Motion for New Trial, Remittitur, and Protective Order, the trial court affirmatively approved the award of punitive damages against Defendant Waters finding that the conduct of Defendant Waters in not keeping Plaintiffs informed about the status of their case and of lying to the Plaintiffs about the dismissal was the gravamen of the punitive damages award. [A copy of the Amended Order Denying Motion for New Trial, Remittitur, and Protective order is attached to the adversary complaint as Exhibit D.]

The case was appealed and the Court of Appeals reversed the punitive damages award. The Tennessee Supreme Court granted Plaintiffs' application for permission to appeal. [*See Metcalfe v. Waters*, No. 02A01–9510–CV–11236, 1996 WL 622696 (Tenn.Ct.App. Oct. 29, 1996) ].

[A copy of the opinion of the Tennessee Supreme Court in *Metcalfe v. Waters*, 970 S.W.2d 448 (Tenn.1998), is attached to the adversary complaint as Exhibit E. The defendant admits that the opinion is attached, but does not admit the plaintiffs' characterization of the opinion.]

The issue of compensatory damages was remanded to the trial court. The trial court entered an Order Reinstating the Jury Verdict; however, the Plaintiffs have entered an Order nonsuiting the claims against Defendant Waters [A copy of the Order Reinstating Jury Verdict is attached to the adversary complaint as Exhibit F.]

On October 21, 1998, Defendant Larry Waters filed a Chapter 7 petition commencing the above-referenced case. Defendant Waters listed Billie J. Metcalfe as an unsecured creditor and listed the debt as a civil judgment in the amount of $450,000. As Plaintiffs have

non-suited their remaining claims against Defendant Waters, the only debt at issue is the $100,000 punitive damages award.

This court's review of the opinions of the Tennessee Court of Appeals and the Tennessee Supreme Court reveals that the court of appeals felt that a remittitur of the compensatory damages award to $100,000 would be appropriate on the record established at trial. Realizing that a remittitur from $450,000 to $100,000 would in effect destroy the jury's verdict, the court instead vacated the jury verdict and remanded the case for new trial on the issue of damages. *Metcalfe v. Waters*, 1996 WL 622696, *4 (Tenn. Ct. App.1996). Further, the court of appeals vacated the jury verdict for punitive damages and directed a verdict for the defendant on the basis that the egregious conduct that led to the award of punitive damages was not contemporaneous with the negligent conduct that warranted the award of compensatory damages. *Id.* at *5.

The Tennessee Supreme Court reversed the decision of the court of appeals in part reinstating the jury's verdict as to punitive damages. The court found, "There was clear and convincing evidence of intentional, fraudulent, malicious, or reckless conduct on the part of Waters, and there is no requirement that attempts to conceal be contemporaneous with the original wrongdoing." *Metcalfe v. Waters*, 970 S.W.2d 448, 452 (Tenn.1998). The court remanded the case to the trial court for a new trial solely on the issue of compensatory damages. *Id.*

Upon remand, it appears that the plaintiffs took a voluntary nonsuit as to the defendant Waters only. TENN.R.CIV.P. 41.01 provides that a plaintiff has a right, under certain conditions, to take a voluntary nonsuit to dismiss an action without prejudice before the conclusion of trial.[1] The plaintiffs and defendant apparently agree that the effect of the plaintiffs' voluntary nonsuit was to dismiss the plaintiffs' claim for compensatory damages as to Waters, but to leave intact the judgment for punitive damages as reinstated by the Tennessee Supreme Court.

## II.

The court determines a motion for judgment on the pleadings under FED.R.CIV.P. 12(c) [FED.R.BANKR.P. 7012(c) ] in the same manner as a motion to dismiss under Rule 12(b)(6). *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir.1998); *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 n. 1 (6th Cir.1988). The court must construe the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the non-moving party. 5A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, 2D ED., § 1368 (West 1990). In addition, the court may consider matters of public record, and authentic documents upon which the complaint is based if attached to the complaint or as an exhibit to the motion. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1391 (3d Cir.1994); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196–97 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994). The movant

---

1. TENN.R.CIV.P. 41.01 provides:

 (1) Subject to the provisions of Rule 23.05 or Rule 66 or of any statute, and except when a motion for summary judgment made by an adverse party is pending, the plaintiff shall have the right to take a voluntary nonsuit to dismiss an action without prejudice by filing a written notice of dismissal at any time before the trial of a cause and serving a copy of the notice upon all parties, and if a party has not already been served with a summons and complaint, the plaintiff shall also serve a copy of the complaint on that party; or by an oral notice of dismissal made in open court during the trial of a cause; or in jury trials at any time before the jury retires to consider its verdict and prior to the ruling of the court sustaining a motion for a directed verdict. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of plaintiff's motion to dismiss, the defendant may elect to proceed on such counterclaim in the capacity of a plaintiff.

must clearly establish that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law. WRIGHT & MILLER, § 1368. "The plaintiff may not secure a judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery." *Id.*

In the alternative, the plaintiff prays for summary judgment. FED.R.CIV.P. 56. Federal Rule of Bankruptcy Procedure 7056 mandates the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) ("the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the non-moving party's case"). Under FED.R.CIV.P. 56(e), the burden shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. 2548. That burden is not discharged by "mere allegations or denials." FED. R.CIV.P. 56(e). All legitimate factual inferences must be made in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant.

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Although the defendant did not file his own motion for summary judgment, he states in his memorandum in opposition to the plaintiffs' motions that "his [sic] matter could and should be decided upon summary judgment, as opposed to trial in the matter, since the parties agree on the facts." As stated previously, neither party submitted matters for the court's consideration outside of the pleadings and documents of public record attached to the pleadings and motions.

## III.

### A.

◼ As an initial matter, the court will consider what preclusive effect, if any, will be given to the findings and conclusions of the state courts in the underlying medical malpractice case. 28 U.S.C. § 1738 provides in pertinent part:

> The . . . judicial proceedings of any court of any . . . State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.

Section 1738 "directs a federal court to refer to the preclusion law of the State in which judgment was rendered. It has long been established that § 1738 does not allow federal courts to employ their own rules . . . in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept rules chosen by the State from which the judgment is taken.' " *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 (1985) (quoting *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 481–82, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)). It is settled that "collateral estoppel principles . . . apply in

discharge exception proceedings pursuant to § 523(a)." *Grogan v. Garner*, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991).

The distinction between and requirements for application of the doctrines of res judicata and collateral estoppel in Tennessee are the following:

The term "res judicata" is defined as a "[r]ule that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action....[T]o be applicable, it requires identity of cause of action, or person and parties to action, and of quality in persons for or against whom claim is made." Black's Law Dictionary 1172 (5th ed.1979) (citations omitted)....

The doctrine of res judicata bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit. Collateral estoppel operates to bar a second suit between the same parties and their privies on a different cause of action only as to issues which were actually litigated and determined in the former suit. *Goeke v. Woods*, 777 S.W.2d 347, 349 (Tenn.1989) (quoting from *Massengill v. Scott*, 738 S.W.2d 629, 631 (Tenn.1987)). Res judicata and collateral estoppel apply only if the prior judgment concludes the rights of the parties on the merits. *A.L. Kornman Co. v. Metropolitan Government of Nashville and Davidson County*, 216 Tenn. 205, 391 S.W.2d 633, 636 (1965). One defending on the basis of res judicata or collateral estoppel must demonstrate that 1) the judgment in the prior case was final and concluded the rights of the party against whom the defense is asserted, and 2) both cases involve the same parties, the same cause of action, or identical issues. *Scales v. Scales*, 564 S.W.2d 667, 670 (Tenn.App.1977), *cert. denied* (Tenn.1978). *New York Life Ins. Co. v. Nashville Trust Co.*, 200 Tenn. 513, 292 S.W.2d 749 (1956).

*Richardson v. Tennessee Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn.1995). "To sustain a plea of collateral estoppel it must be shown, inter alia, that the issue sought to be concluded not only was litigated in the prior suit but was necessary to the judgment in that suit." *Scales v. Scales*, 564 S.W.2d 667, 670 (Tenn.App.1977), *cert. denied*, (Tenn.1978); *New York Life Ins. Co. v. Nashville Trust Co.*, 200 Tenn. 513, 292 S.W.2d 749 (1956) (citing *Shelley v. Gipson*, 218 Tenn. 1, 400 S.W.2d 709 (1966)).

Although the plaintiffs' memorandum discusses both the doctrines of res judicata and collateral estoppel, the plaintiffs make no clear argument for the application of res judicata in this case. The doctrine of res judicata bars a second suit between the same parties on the same cause of action. Res judicata is not applicable in this case because the underlying cause of action in the state court is not the same cause of action as in this United States Bankruptcy Court. The state court suit sought damages resulting from attorney malpractice. This case seeks a determination pursuant to the laws of the United States of the dischargeability of a debt resulting from the state court suit. *See Massengill v. Scott*, 738 S.W.2d 629, 630 (Tenn.1987) (second suit based upon common law tort not barred by prior judgment based upon federal statute).

It is not entirely clear what issues the plaintiff seeks to foreclose through application of the doctrine of collateral estoppel. It seems that the defendant urges this court to find his conduct which led to the imposition of punitive damages merely negligent. This he cannot do in light of the Tennessee Supreme Court's reinstatement of the jury's verdict with respect to punitive damages. The jury found "by clear and convincing evidence, Defendant Larry Waters was guilty of intentional,

fraudulent and/or reckless conduct warranting punitive damages." The issue of whether the defendant's conduct which gave rise to the punitive damages award was merely negligent was actually litigated in the prior suit. Indeed, the Tennessee Supreme Court expressly reversed the Tennessee Court of Appeals with respect to this issue, stating:

Given Waters' repeated transgressions and callous disregard for the rights of his clients, there was overwhelming evidence from which the jury could find, at a minimum, reckless conduct, that is conduct constituting a gross deviation from the applicable standard of care.

*Metcalfe v. Waters,* 970 S.W.2d 448, 452 (Tenn.1998). Further, the determination of whether the defendant's conduct was merely negligent or more culpable was necessary to the judgment. The Court held that an award of punitive damages on a legal malpractice claim requires a showing by clear and convincing evidence of intentional, fraudulent, malicious, or reckless conduct. *Id.* at 451 (citing *Hodges v. S.C. Toof & Co.,* 833 S.W.2d 896 (Tenn. 1992)). Had the jury found that the defendant's conduct was merely negligent, it could not have awarded punitive damages to the plaintiffs. The prerequisites for the application of collateral estoppel are present with respect to the defendant's negligence. The defendant is bound by the finding of the jury that his conduct leading to the award of punitive damages was intentional, fraudulent and/or reckless.

This conclusion does not mean that the plaintiffs will automatically prevail in the present suit, however. There are other more specific issues before this court which were not determined in the prior action. This court must determine whether the defendant's conduct and relationship to the plaintiffs fall within one or more of the exceptions to discharge relied upon by the plaintiffs.

### B.

▆ 11 U.S.C. § 523(a)(2)(A) provides as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

A creditor must prove the applicability of this exception to discharge by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991)). Exceptions to discharge are to be construed strictly against the creditor. *Rembert v. AT & T Universal Card Services, Inc. (In re Rembert),* 141 F.3d 277, 280 (6th Cir.1998) *cert. denied,* — U.S. —, 119 S.Ct. 438, 142 L.Ed.2d 357 (1998) (citing *Manufacturer's Hanover Trust v. Ward (In re Ward),* 857 F.2d 1082, 1083 (6th Cir.1988)). In order to except a debt from discharge under § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor obtained money, property or services, or an extension, renewal, or refinancing of credit through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of the loss. *See Rembert,* 141 F.3d at 280 (citing *Longo v. McLaren (In re McLaren),* 3 F.3d 958, 961 (6th Cir.1993)).

The defendant did not address directly in his memorandum the plaintiffs' § 523(a)(2)(A) arguments. Because of the requirement that exceptions to discharge be strictly construed against the creditor, the court must satisfy itself that the plaintiffs have proved each of the required elements.

▆ The defendant admits that he lied to the plaintiffs concerning the dismissal

of their lawsuit, but asserts that he lied after plaintiffs' claim was barred by the statute of limitations. Actually it appears that the plaintiffs' claims were lost not by the passing of a statute of limitations, but by the defendant failing to inform the plaintiffs of their right to appeal from or otherwise take steps to avoid orders granting summary judgment to one of the defendants, granting a motion to dismiss filed by another defendant, and dismissing the complaint as to the remaining defendants when the defendant failed to appear for trial. *See* Complaint, paragraphs 32 through 41, and Amended Answer of Defendant Waters (Exhibits A and B to Amended Complaint to Determine Dischargeability of Debt). Following the dismissals, the defendant either failed to respond to plaintiffs' inquiries about the status of their case and/or falsely stated that their case was proceeding as planned. *See* Complaint, paragraphs 48 through 51 and Amended Answer of Defendant Waters (Exhibits A and B to Amended Complaint to Determine Dischargeability of Debt). The trial court described these actions as the basis for the punitive damages award:

> The conduct of the Defendant Waters in not keeping the Plaintiffs informed about the status of their case and of lying to the Plaintiffs about the dismissal is the gravamen of the punitive damages award. The Defendant Waters did not take any steps to set aside the dismissal of the case or to protect his clients' interests after the case was dismissed.

*See* Amended Order Denying Motion for New Trial, Remittitur, and Protective Order (Exhibit F to Memorandum of Law in Support of Plaintiffs' Motion for Judgment on the Pleadings or in the Alternative for Summary Judgment).

 It is settled that concealment of a material fact satisfies the material misrepresentation requirement of § 523(a)(2)(A). *See, e.g., In re Docteroff,* 133 F.3d 210, 216 (3d Cir.1997); *In re*

*Young,* 91 F.3d 1367, 1373–74 (10th Cir. 1996); *Matter of Van Horne,* 823 F.2d 1285, 1288 (8th Cir.1987); *In re Phillips,* 804 F.2d 930 (6th Cir.1986). The more difficult question in this case is whether the debtor obtained money or property as the result of his material misrepresentation. The plaintiffs argue that the debtor received a benefit consisting of the avoidance of a legal malpractice judgment. The plaintiffs urge the court to treat a debt resulting from a false representation made for the purpose of avoiding liability the same as a debt for money obtained by a false representation.

There are three views concerning whether a debtor must personally receive money or services as the result of a false representation in order for the § 523(a)(2)(A) exception to apply. According to one view, "unless the debtor actually obtained money or property for himself through false representations, the debt remains dischargeable." *Bates v. Winfree (In re Winfree),* 34 B.R. 879, 882 (Bankr. M.D.Tenn.1983) (quoting *Century First Nat'l Bank v. Holwerda (Matter of Holwerda),* 29 B.R. 486, 489 (Bankr.M.D.Fla. 1983), which cited *Rudstrom v. Sheridan,* 122 Minn. 262, 142 N.W. 313, 314 (1913)). The opposite view is that the exception "applies plainly to all obtaining of property by the bankrupt, whether for himself or for anybody else." *Winfree,* 34 B.R. at 883 (quoting *In re Kunkle,* 40 F.2d 563 (E.D.Mich.1930)). The third view is characterized as the "receipt of benefits" theory. Pursuant to that view, "if the debtor benefits in some way from the property obtained through his deception, the debt is nondischargeable." *Winfree,* 34 B.R. at 883 (quoting *Century First Nat'l Bank v. Holwerda (Matter of Holwerda),* 29 B.R. at 489). *See also In re Mones,* 169 B.R. 246, 251 (Bankr.D.D.C.1994); *Simmons v. Wade (In re Wade),* 43 B.R. 976, 980 (Bankr.D.Colo.1984).

The Sixth Circuit appears to favor receipt of benefits theory. In *Brady v. McAllister,* the court assumed, but did not

decide, that a creditor must prove that the debtor directly or indirectly obtained some tangible or intangible financial benefit in order to prevail under § 523(a)(2)(A). *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172 (6th Cir.1996). The court does not require that the debtor directly and personally receive every dollar lost by the creditor. *Id.* In *Brady*, the creditor was able to demonstrate that the debtor benefitted when a corporation controlled by the debtor was the recipient of the creditor's funds. *See also HSSM # 7 Limited Partnership v. Bilzerian (In re Bilzerian)*, 100 F.3d 886, 890 (11th Cir. 1996) ("We agree with sister circuits [6th, 5th and 9th] that the 'receipt of benefits' theory is the more well-reasoned approach."); *Luce v. First Equipment Leasing Corp. (Matter of Luce)*, 960 F.2d 1277, 1283 (5th Cir.1992) (section 523(a)(2)(A) does not require that debtor actually procure money, property, services, or credit for him or herself, but rather that the debtor benefit in some way from the money, property, services, or credit obtained from deception).

Common to all three views is the requirement that the debtor obtain money, property or services. *See Zirkel v. Tomlinson (In re Tomlinson)*, 1999 WL 294879, *8 (Bankr.N.D.Ill.1999); *Golant v. Care Comm, Inc.*, 216 B.R. 248, 253 (N.D.Ill.1997). District Judge Norgle offers the following hypothetical to illustrate the three views:

> Under the first view, the debtor is required to induce the creditor to transfer money to his bank account. Under the second [receipt of benefits] view, it is sufficient if the debtor induces the creditor to transfer money to his daughter's account, and he derives some benefit from the transfer. Under the third view, it is sufficient if the debtor induces the creditor to transfer money to somebody's account, even though the debtor will not derive any benefit.

*Golant*, 216 B.R. at 253.

In this case, the plaintiffs cannot point to any money, property or services ob-

tained by the debtor for his own benefit or the benefit of anyone else as the result of his deception. The plaintiffs assert that the debtor's admittedly false representations were made to avoid a legal malpractice judgement debt, and that debts resulting from a false representation made for the purpose of avoiding liability should receive the same treatment as a debt for money obtained by a false representation. In support of their position, plaintiffs rely upon *In re Spicer*, 155 B.R. 795 (Bankr. D.D.C.1993), in which the district court held that "any benefit to the debtor is sufficient for a finding that the debtor obtained property within the meaning of § 523(a)(2)(A)." *Id.* at 802. In *Spicer*, the debtor real estate broker procured federal mortgage insurance for home buyers by falsifying the documents submitted to the government. As a result of these falsifications, the Department of Housing and Urban Development issued the mortgage insurance, and the debtor received commissions on the sales. *Id.* at 798. The debtor in *Spicer* alleged that he obtained no benefit himself from these misrepresentations. *Id.* at 802. The court, however, found a benefit in the form of the commissions he received on the sales as a result of his obtaining for third parties government mortgage insurance, a form of property. *Id.* at 803. Since the debtor obtained property as a result of his misrepresentations, the court concluded that the first element of § 523(a)(2)(A) had been met. *Id.*

The present case differs from *Spicer* in that no money or property was obtained from the plaintiffs. Property "denotes something subject to ownership, transfer or exclusive possession and enjoyment, which may be brought within the dominion and control of the court through some recognized process." *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915) (quoted in *Sample v. Harlan (In re Harlan)*, 7 B.R. 83 (Bankr.D.Ariz.1980)). Money is a form of property. While the

plaintiffs' cause of action was clearly property, it was not "obtained by" anyone as the result of the debtor's conduct. *See Gore v. Kressner (In re Kressner)*, 206 B.R. 303, 311 (Bankr.S.D.N.Y.1997) (forbearance in exercising rights under state court judgment did not constitute an extension of credit or receipt of money or property within meaning of ordinary fraud exception to discharge); *Harlan*, 7 B.R. at 85 (neither assumption of debt to the plaintiff by the debtor nor forbearance of plaintiff to file suit against third-party makers of note was "property" which could have been obtained by false pretenses).

Further, the loss of the plaintiffs' cause of action was not the basis of the punitive damages award. The punitive damages award was a sanction imposed upon the debtor by the state courts as the result of conduct that occurred after the plaintiffs suffered the loss of their lawsuit. The plaintiffs and defendant have stipulated that the compensatory damages award resulted from the defendant's negligence. *See* Plaintiffs' Reply Memorandum to Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Judgment on the Pleadings or in the Alternative for Summary Judgment, at 7. ("Defendant's negligence was the basis for the award of compensatory damages against Defendant Waters which is not at issue in this proceeding.") Were this debt before the court, it would be dischargeable. The compensatory damages award, however, is not at issue in this adversary proceeding. The plaintiffs assert that the punitive damages were awarded "for separate intentional conduct which did not occur contemporaneously with Defendant's negligence." *Id.* at 9. The compensatory damages award was intended . to fully compensate the plaintiffs for the loss of their personal injury cause of action.[2] The plaintiffs did not suffer any additional loss of money or property as the result of the defendant's allegedly fraudulent conduct. This case is

thus distinguishable from *Cohen v. De La Cruz*, in which the Supreme Court held that punitive damages assessed in connection with a debt that is excepted from discharge pursuant to § 523(a)(2)(A) are also excepted from discharge. *Cohen v. De La Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). As the court explained:

> [T]he [§ 523(a)(2)(A) ] exception encompasses 'any debt ... for money, property [etc.], to the extent [that the money, property, etc., is] obtained by' fraud. The phrase thereby makes clear that the share of money, property, etc., so obtained gives rise to a nondischargeable debt. Once it is established that specific money or property has been obtained by fraud, however, 'any debt' arising therefrom is excepted from discharge.

*Id.* at 1214. In this case the punitive damages award does not arise from a debt that is nondischargeable. This does not necessarily mean that the punitive damages award is also dischargeable, but it does mean that the court must separately analyze the facts supporting the award of punitive damages to determine whether each of the elements of § 523(a)(2)(A) is present with respect to that debt. In this case, the plaintiffs have failed to establish that the debt for punitive damages arises from money, property, service or credit obtained by false pretenses or actual fraud. *See Community Nat'l Bank v. Slominski (In re Slominski)*, 229 B.R. 432, 434 (Bankr.D.N.D.1998) (for a debt to be excepted from discharge under § 523(a)(2)(A), the funds themselves must have been obtained by fraud in the inception); *Golant v. Care Comm, Inc.*, 216 B.R. 248 (N.D.Ill.1997) (debtor-attorney's obligation to creditor for sanctions previously imposed by the district court, based on debtor's conduct in unreasonably and vexatiously multiplying unrelated district court proceedings, was not debt for any money "obtained," within meaning of "false pre-

---

**2.** For reasons that do not appear in the record before this court, the plaintiffs dismissed their cause of action for compensatory damages against the defendant.

tenses" exception to discharge); *Fleming v. Preston (In re Preston)*, 47 B.R. 354, 357 (E.D.Va.1983) (debtor obtained no money, property or thing of value and creditor sustained no loss by reason of debtor's issuance of insufficient funds check given to pay preexisting debt); *see also* 4 *L. King, Collier's on Bankruptcy*, § 523.08[1][d], 523–44 (15th ed.1999) ("If the property or services were obtained before the making of any false representation, subsequent misrepresentations will have no effect on dischargeability.")

The defendant is entitled to judgment entered in his favor pursuant to § 523(a)(2)(A).

### C.

■ Plaintiffs also seek to except the punitive damages award from discharge pursuant to § 523(a)(4), which provides:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

11 U.S.C. § 523(a)(4). The Court of Appeals for the Sixth Circuit has held that, "The attorney-client relationship, without more, is insufficient to establish the necessary fiduciary relationship for defalcation under § 523(a)(4). Instead, the debtor must hold funds in trust for a third party to satisfy the fiduciary relationship element of the defalcation provision of § 523(a)(4)." *R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 179 (6th Cir.1997); *see also Capitol Indem. Corp. v. Interstate Agency, Inc. (In re Interstate Agency)*, 760 F.2d 121 (6th Cir.1985) (decided under Bankruptcy Act § 17(a)(4), the predecessor to § 523(a)(4)). In footnote 6 of the opinion, the *Garver* court cited with favor *Freeman v. Frick (In re Frick)*, 207 B.R. 731 (Bankr.N.D.Fla.1997), which concluded that "to extend the scope of Section 523(a)(4) generally to acts of malpractice or unethical conduct of professionals goes well beyond the longstanding precedents of courts in this circuit and the U.S. Supreme Court." *Frick*, 207 B.R. at 738. The *Garver* court went on to note that "[w]hile attorneys should perhaps be held to a higher standard than other professionals, that is a decision for Congress, not the federal courts, to make." *Garver*, 116 F.3d at n. 6.

Plaintiffs urge the Court to consider the position of the minority of courts that have held that fraud within the attorney-client fiduciary relationship is sufficient to trigger the exception to discharge found in § 523(a)(4). *See, e.g., Tudor Oaks Ltd. Partnership v. Cochrane (In re Cochrane)*, 179 B.R. 628, 634 (Bankr.D.Minn.1995); *Tai v. Charfoos (Matter of Charfoos)*, 183 B.R. 131, 136–38 (Bankr.E.D.Mich.1994). These decisions were considered by the court in *Garver* and rejected. This court is not persuaded that the reach of § 523(a)(4) should be expanded to include legal malpractice claims, and in any event, is bound by the decision in *Garver*. The defendant is entitled to have judgment entered in his favor pursuant to § 523(a)(4).

### D.

■ Finally, Plaintiffs contend that the punitive damages award is nondischargeable pursuant to § 523(a)(6), which provides:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6). In *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), the Supreme Court held that § 523(a)(6) does not except from discharge negligently or recklessly inflicted injuries. *Id.* at 978. Rather, the judgment debt must be for a willful and malicious injury. *Id.* In analyzing the Court's conclusion in *Geiger*, the Sixth Circuit has recently adopted the language of the RESTATEMENT (SECOND) OF TORTS to define a "willful and malicious injury":

[W]e now hold that unless "the actor desires to cause consequences of his act, or ... believes that the consequences are substantially certain to result from it," RESTATEMENT (SECOND) OF TORTS § 8A, at 15 (1964), he has not committed a "willful and malicious injury" as defined under § 523(a)(6).

*Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 466 (6th Cir.1999) (suit to determine dischargeability of debt arising from attorney malpractice remanded to resolve issue of dischargeability for willful and malicious injury under *Geiger* standard).

As discussed previously, the injury sustained by the plaintiffs resulted from the defendant's negligence. No new or additional injury resulted from the defendant's later conduct. Were this not true, the court would reserve this issue for trial to determine whether the defendant's intentional, fraudulent and/or reckless conduct satisfied the *Geiger* standard for willful and malicious conduct. If the conduct were merely reckless, the plaintiffs could not prevail under *Geiger*. In this case, however, that issue need not be decided because the disputed debt in this proceeding arises from a sanction imposed by the jury as the result of the debtor's efforts to conceal his negligence. The plaintiffs' injuries resulted from the defendant's negligence. The defendant is entitled to have judgment entered in his favor pursuant to § 523(a)(6).

## IV.

For the foregoing reasons, plaintiffs' motion for judgment on the pleadings or in the alternative for summary judgment will be denied. Judgment will be entered for defendant on each of plaintiffs' theories of recovery. An order to this effect will be entered contemporaneously with the filing of this opinion.