In re Stephen James LUSK, Debtor.

Brett Houghton, Ceree Houghton, Houghton Auto Exchange, Inc., Plaintiffs,

v.

Stephen James Lusk, Defendant.

Bankruptcy No. 03–30193.
Adversary No. 03–3108.

United States Bankruptcy Court, E.D. Tennessee.

Feb. 6, 2004.

David Day, Cookeville, TN, for Plaintiffs.

James R. Moore, Moore & Brooks, Knoxville, TN, for Defendant/Debtor.

## *MEMORANDUM*

RICHARD S. STAIR, JR., Bankruptcy Judge.

This adversary proceeding is before the court upon the Complaint Objecting to Discharge of Debt and Complaint to Establish Legal Malpractice and Amount of Damages (Complaint) filed by the Plaintiffs on July 2, 2003, requesting the entry of a judgment against the Defendant, finding him liable for legal malpractice, awarding damages therefor, and finding that said damages are nondischargeable under 11 U.S.C.A. § 523(a)(4) (West 1993). The Defendant opposes the relief sought, averring that under the authority of the Sixth Circuit Court of Appeals, legal malpractice claims do not fall within the exception to discharge provided through § 523(a)(4).

At the parties' request and pursuant to the Order entered on November 10, 2003, the court bifurcated the nondischargeability and damages issues, in order to first determine whether the Plaintiffs' claim is

nondischargeable under 11 U.S.C.A. § 523(a)(4). The facts and documents essential to the resolution of this issue are before the court on the Stipulations and Allegations filed by the parties on December 16, 2003, the Memorandum of Law filed by the Defendant on January 5, 2004, and the Plaintiffs' Brief in Opposition to Motion for Summary Judgment filed on January 12, 2004.[1]

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(I) (West 1993).

## I

The Plaintiffs executed a Lease Agreement with Mose Waller, Jr. and Joyce Waller, Trustees of the Mose L. Waller, Jr. and Joyce C. Waller Living Trust (the Trust), in November 1996, whereby the Plaintiffs leased real property located at 950 Highway 321 North, Lenoir City, Tennessee. The term of the Lease Agreement was two years, commencing October 1, 1996, and ending October 31, 1998, with various extension options. On October 31, 1998, the Plaintiffs exercised an option to extend the Lease Agreement for an additional three years, through October 31, 2001. In April 1999, the Plaintiffs were notified via letter by Mr. Waller, on behalf of the Trust, that the Lease Agreement was null and void for failure to pay rent, and when the Plaintiffs sought to tender rent, Mr. Waller refused. Instead, at the end of April 1999, the Trust filed a detainer warrant with the Loudon County General Sessions Court, alleging that the Plaintiffs wrongfully possessed the leased real property (the Initial Detainer Action).

As a result of these events, in May 1999, the Plaintiffs retained the Defendant, an attorney, to assist them in the Initial Detainer Action, thus creating an attorney-client relationship. In connection with this representation, the Plaintiffs provided the Defendant with copies of the Lease Agreement along with the necessary funds to pay rent to the Trust. The Defendant represented the Plaintiffs at a trial on the Initial Detainer Action, which was dismissed on May 17, 1999. Thereafter, the Defendant returned the funds that he was holding for rent payments to the Plaintiffs. On May 26, 1999, the Trust filed an appeal to the Circuit Court for Loudon County, Tennessee.

In early July 1999, the Trust filed a second detainer action against the Plaintiffs, again alleging that the Plaintiffs were wrongfully in possession of the leased real property (the Second Detainer Action). The trial on the Second Detainer Action was scheduled for July 15, 1999, and the Defendant agreed to represent the Plaintiffs in their defense. However, shortly before the scheduled trial date, the Defendant contacted the Plaintiffs, informed them that he would not be at the July 15, 1999 trial, and instructed them to ask for a continuance. The Plaintiffs appeared for the trial in Loudon County General Sessions Court on July 15, 1999, without the Defendant being present, and the court granted a judgment against the Plaintiffs. The Defendant's failure to appear at the July 15, 1999 trial was due to his attendance at a meeting involving a real estate dispute pending in North Carolina.

The Plaintiffs requested that the Defendant pursue an appeal of the Second Detainer Action on their behalf, and to that end, on July 21, 1999, the Defendant unsuccessfully attempted to consolidate the Second Detainer Action with the appeal of the Initial Detainer Action. On July 28,

---

**1.** The title of this document was erroneous, as there is no motion for summary judgment pending in this case.

1999, the Defendant prepared and submitted to the Loudon County Circuit Court an Order of Dismissal of the pending appeal of the Initial Detainer Action. This Order also stated that the Plaintiffs would not appeal the judgment rendered in the Second Detainer Action.

The Defendant filed the voluntary petition commencing his Chapter 7 bankruptcy case on January 14, 2003. On July 2, 2003, the Plaintiffs filed the Complaint initiating this adversary proceeding. The Defendant filed an Answer on September 2, 2003, denying all allegations in the Complaint. Thereafter, the parties conducted discovery, including depositions of the Defendant. In his depositions, the Defendant has made the following admissions: (1) that he should have been present at the July 15, 1999 trial in the Loudon County General Sessions Court in defense of the Plaintiffs instead of attending a non-litigation meeting in North Carolina; (2) that his actions deviated from the standard of care; (3) that he knew the Plaintiffs put their trust in him to handle their case; (4) that he had a fiduciary duty to represent the Plaintiffs in court; (5) that his failure to properly represent the Plaintiffs was a breach of his fiduciary duty to them; (6) that he knew the Plaintiffs did not have the financial ability to post an appeal bond in order to appeal the judgment rendered in the Second Detainer Action; (7) that as a result of his malpractice, the Plaintiffs suffered damages including the value of the building located on the leased real property, the loss of rental on the building, and legal fees and expenses; and (8) that he was willing to discuss how to "try and make it right" with the Plaintiffs.

Finally, the parties stipulate that all funds paid to the Defendant and put into his trust account were returned to the Plaintiffs, that all of the Plaintiffs' claims against the Defendant result from his conduct as their attorney, and that none of those claims involve any missing funds entrusted to the Defendant by the Plaintiffs.

## II

 The nondischargeability of debts is governed by 11 U.S.C.A. § 523, which provides, in pertinent part:

(a) A discharge under section 727[2] ... of this title does not discharge an individual debtor from any debt—

. . . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]

11 U.S.C.A. § 523(a)(4). As the parties seeking a determination of nondischargeability, the Plaintiffs bear the burden of proving all elements by a preponderance of the evidence, and the court construes § 523(a) strictly against the Plaintiffs and liberally in favor of the Defendant. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991); *Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir.1998); *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 759 (Bankr.E.D.Tenn.2003).

 Nondischargeability under § 523(a)(4) requires that the underlying debt was obtained in one of three ways: by embezzlement, by larceny, or by fraud or defalcation while acting in a fiduciary capacity. The Plaintiffs aver that they are entitled to a judgment based upon the Defendant's defalcation while he was acting in a fiduciary capacity.

 Defalcation under § 523(a)(4) requires proof of: "1) a fiduciary relationship; 2) breach of that fiduciary relation-

---

**2.** All debts of a Chapter 7 debtor arising prepetition are discharged, "[e]xcept as provided in section 523 of this title ...." 11 U.S.C.A. § 727(b) (West 1993).

ship; and 3) a resulting loss." *R.E. Am., Inc. v. Garver (In re Garver)*, 116 F.3d 176, 178 (6th Cir.1997). In *Garver*, the Sixth Circuit expressly addressed whether legal malpractice by an attorney falls within the scope of § 523(a)(4), holding that it did not. There, the plaintiff had already obtained a judgment against the debtor in the state court, prior to his filing for bankruptcy. After the debtor filed for relief under Chapter 7, the plaintiff filed its complaint seeking to determine the judgment nondischargeable, averring that the debtor's defalcation occurred while he was acting in a fiduciary capacity, as the plaintiff's attorney. The bankruptcy court's finding that the debt was nondischargeable was affirmed by the district court. The Sixth Circuit reversed.

In its analysis, the *Garver* court first acknowledged that there is a conflict in authority as to how the term "fiduciary capacity" is construed in light of an attorney-client relationship, recognizing that some courts have adopted a narrow approach, requiring the existence of a technical or express trust in order to satisfy § 523(a)(4), while other courts have adopted a broader approach, finding that the attorney-client relationship, in and of itself, is sufficient to establish a fiduciary relationship under § 523(a)(4). *See Garver*, 116 F.3d at 178. The court then looked to its own precedent, primarily *Capitol Indem. Corp. v. Interstate Agency, Inc. (In re Interstate Agency, Inc.)*, 760 F.2d 121 (6th Cir.1985), and expressly adopted the narrower approach. *See Garver*, 116 F.3d at 178. The court then held that "[t]he attorney-client relationship, without more, is insufficient to establish the necessary fiduciary relationship for defalcation under § 523(a)(4). Instead, the debtor must hold funds in trust for a third party to satisfy the fiduciary relationship element of the defalcation provision of § 523(a)(4)." *Garver*, 116 F.3d at 179.

As in the case presently before the court, the parties in *Garver* stipulated that a fiduciary relationship existed; however, the definition of "defalcation" was not met. Relying upon the definition given in *Interstate Agency*, the *Garver* court expounded that defalcation involves "the embezzlement, misappropriation of trust funds held in a fiduciary capacity, and failure to properly account for trust funds." *Garver*, 116 F.3d at 179 (citing *Interstate Agency*, 760 F.2d at 125). Therefore, the court opined that "[t]he mere failure to meet an obligation while acting in a fiduciary capacity simply does not rise to the level of defalcation; an express or technical trust must also be present." *Garver*, 116 F.3d at 179. The court also stated, in a footnote, that

> Because the attorney-client relationship by itself is insufficient to create the necessary fiduciary relationship for purposes of the defalcation provision of § 523(a)(4), an attorney's breach of fiduciary duty, without more, does not constitute defalcation. Absent an express or technical trust, an attorney's legal malpractice, like all other types of professional malpractice, remains dischargeable under the [Bankruptcy] Code.... While attorneys should perhaps be held to a higher standard than other professionals, that is a decision for Congress, not the federal courts, to make.

*Garver*, 116 F.3d at 179 n. 6 (citations omitted).

The Plaintiffs urge the court to look beyond the Sixth Circuit's holding in *Garver*, and instead, adopt the broader definition of "fiduciary duty" employed by other circuits, particularly the Second and Eighth Circuits, which have held that an attorney-client relationship, without more, does constitute a fiduciary relationship as contemplated by § 523(a)(4). *See Andy*

*Warhol Found. for Visual Arts, Inc. v. Hayes (In re Hayes)*, 183 F.3d 162 (2d Cir.1999), and *Tudor Oaks Ltd. P'ship v. Cochrane (In re Cochrane)*, 124 F.3d 978 (8th Cir.1997). In their Brief, the Plaintiffs assert that "[t]he *Garver* decision cited by Defendants is unnecessarily strict and would not be followed today by the Sixth Circuit in the manner asserted by the Defendants, particularly given the trend established by other circuits." [3]

The court disagrees with the Plaintiffs' argument that the Sixth Circuit would not now follow its *Garver* decision. The court refers the Plaintiffs to two unpublished decisions by the Sixth Circuit, both expressly following the *Garver* holding that defalcation under § 523(a)(4) requires the existence of a trust and declining to adopt the broader interpretation set forth by other circuits. *See Castle Nursing Home v. Sullivan (In re Sullivan)*, 19 Fed.Appx. 180, 181, 2001 U.S.App. LEXIS 18655, at *2-*4 (6th Cir. Aug. 9, 2001) (concerning a corporate officer under Ohio law and stating that a common law fiduciary relationship is not enough); *Peoples Bank & Trust Co. of Hazard v. Penick (In re Penick)*, No. 97–5446, 1998 WL 344039, at *2–4, 1998 U.S.App. LEXIS 11676, at *6–10 (6th Cir. May 28, 1998) (concerning a director of a corporation and interpretation of fiduciary duty under Kentucky law).[4]

Additionally, since the Sixth Circuit's decision in *Garver*, bankruptcy courts within this circuit have followed the decision when confronted with cases involving legal malpractice. In particular, the Bankrupt-cy Court for the Western District of Tennessee addressed a complaint under § 523(a)(4) with more egregious facts than those presently before this court. In *Metcalfe v. Waters (In re Waters)*, 239 B.R. 893 (Bankr.W.D.Tenn.1999), the debtor admitted that he had

> failed to apprize the plaintiffs of the status of their case, failed to adequately prepare for trial, failed to refile suit properly after taking a non-suit, failed to file summons properly, failed to appear the second time the case was set for trial, and failed to file a notice of appeal on behalf of the plaintiffs. Defendant Waters conceded that his failure to inform the plaintiffs that the case had been dismissed was an intentional, fraudulent, malicious and/or reckless effort to conceal his mistakes.

*Waters*, 239 B.R. at 896. Additionally, the debtor "lied to the Plaintiffs about the status of the case for several months, telling them it was still pending even though he knew it had been dismissed." *Waters*, 239 B.R. at 896.

As in this case, the plaintiffs in *Waters* urged the court to follow the other circuits' holdings that an attorney-client relationship was sufficient to establish a fiduciary relationship for § 523(a)(4), and even cited the *Cochrane* and *Charfoos* cases relied upon by the Plaintiffs in this case. The *Waters* court held that "[t]hese decisions were considered by the court in *Garver* and rejected. This court is not persuaded that the reach of § 523(a)(4) should be expanded to include legal malpractice

---

**3.** The Plaintiffs also refer the court to *Tai v. Charfoos (In re Charfoos)*, 183 B.R. 131, 138 (Bankr.E.D.Mich.1994), which held that misconduct by an attorney in dealing with a client was sufficient for nondischargeability under § 523(a)(4). The court points out that this decision was rendered prior to the *Garver* decision, and thus, is no longer persuasive or applicable.

**4.** While neither of these cases involved an attorney-client relationship, both cited *Garver* as binding authority, and the *Penick* case expressly quoted the attorney-client language of *Garver*. *See Penick*, 1998 WL 344039, at *3–4, 1998 U.S.App. LEXIS 11676, at *10.

claims, and in any event, is bound by the decision in *Garver*." *Waters*, 239 B.R. at 904. *See also Baker v. Smith (In re Smith)*, 270 B.R. 696, 700–01 (Bankr. N.D.Ohio 2001) (finding that debt owed by an attorney who failed to file lawsuit prior to the statute of limitations and violated rules of professional responsibility was not within the scope of § 523(a)(4) under the *Garver* definition).

This court, too, is bound by the decisions of the Sixth Circuit Court of Appeals, and it will not deviate from the express holdings of that court. For the Plaintiffs to succeed in their nondischargeability action against the Defendant, they must prove the existence of an express or technical trust with regards to their relationship with him.

### III

■■■ Under Tennessee law, an express trust is created "by the direct and positive acts of the parties, by some writing, deed, or will; ... or by the action of a court in the exercise of its authority ...." *Jackson v. Dobbs*, 154 Tenn. 602, 290 S.W. 402, 404 (1926) (quoting *Lafferty v. Turley*, 35 Tenn. 157, 163, 1855 WL 2436 (1855)). "[A]t a minimum, there must be a grantor or settlor who intends to create a trust; a corpus (the subject property); a trustee; and a beneficiary." *Myers v. Myers*, 891 S.W.2d 216, 218 (Tenn.Ct.App.1994). A technical trust is defined as "[a]n obligation arising out of a confidence reposed in a person to whom the legal title of property is conveyed, that he will faithfully apply the property according to the wishes of the creator of the trust." *Knox County v. Fourth & First Nat'l Bank*, 181 Tenn. 569, 182 S.W.2d 980, 984 (1944) (quoting *Jackson*, 290 S.W. at 405).

The Plaintiffs argue that the Defendant was entrusted with their interest in the leased real property that was involved in the litigation, which he agreed to protect by taking their case and appearing in court, thus creating an express or technical trust with regards to those property interests. However, based upon the definitions of these types of trust under Tennessee law, it is apparent that neither is present in this case. There was no property actually transferred from the Plaintiffs to the Defendant to be held in trust. Instead, the Plaintiffs hired the Defendant to represent them in two detainer actions involving leased real property upon which they resided. The Defendant's representation of the Plaintiffs in such a lawsuit does not constitute the creation of a corpus, beneficiary, and/or trustee, nor does it constitute the conveyance of legal title in the action to be used as the creator requests.

Without the existence of an express or technical trust, the Plaintiffs cannot satisfy their burden of proof under § 523(a)(4) that they are entitled to a judgment against the Defendant that is nondischargeable based upon his defalcation while in a fiduciary capacity. Because the Plaintiffs' claim is discharged,[5] the court need not, by a future hearing, determine the amount of any damages sustained by the Plaintiffs as a result of the Defendant's actions. Therefore, the Plaintiffs' Complaint shall be dismissed.

A judgment consistent with this Memorandum will be entered.

### *JUDGMENT*

For the reasons stated in the Memorandum filed this date containing findings of fact and conclusions of law as required by Rule 52(a) of the Federal Rules of Civil Procedure, made applicable to this adver-

---

**5.** The Defendant received his discharge on August 11, 2003.

sary proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure, it is ORDERED, ADJUDGED, and DECREED as follows:

1. The Complaint Objecting to Discharge of Debt and Complaint to Establish Legal Malpractice and Amount of Damages filed by the Plaintiffs on July 2, 2003, is DISMISSED.

2. The Plaintiffs' claim against the Defendant is discharged.